OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiffs, retired New York City police officers who receive or are eligible to receive payments from the Police Officer’s Variable Supplements Fund (POVSF), challenge chapter 247 of the Laws of 1988, which changed the funding and benefit structure of the POVSF, as an unconstitutional impairment of contractual pension rights in violation of article V, § 7 of the New York Constitution and the Federal Contract Clause (US Const, art I, § 10, cl [1]).
 

 The POVSF was created (as the Patrolmen’s Variable Supplements Fund) in 1970 as a result of collective bargaining negotiations between New York City and the Patrolmen’s Benevolent Association (PBA). As originally implemented, the POVSF was funded by a formula based on the extent to which the earnings of the Police Pension Fund
 
 [1]
 
 from investments in equities exceeded the hypothetical earnings from fixed income securities. Additionally, the board of trustees created to administer the POVSF was given broad discretion concerning the manner and amount of disbursements of POVSF funds to eligible beneficiaries (see
 
 generally, Poggi v City of New York,
 
 109 AD2d 265,
 
 affd
 
 67 NY2d,794;
 
 see also, Gagliardo v Dinkins,
 
 89 NY2d 62 [decided herewith]).
 

 In 1988, however, legislation was passed changing both the funding method and payment structure of the POVSF: the
 
 *55
 
 board of trustees’ discretion over disbursements was eliminated and replaced with a schedule for defined annual payments and the method for funding the POVSF was changed from a formula based on the Police Pension Fund’s investment equity earnings to a requirement that amounts be transferred from the Police Pension Fund only as needed to finance the defined POVSF payments
 
 (see,
 
 L 1988, ch 247, §§ 9, 15, 17, 18 [amending Administrative Code of City of NY §§ 13-271, 13-232 and creating § 13-232.1]). Additionally, the 1988 legislation provided for a one-time transfer of 15% of the assets of the POVSF (up to $75 million) to the City (L 1988, ch 247, § 14) and specifically made the defined annual benefits a guaranteed obligation of the City (L 1988, ch 247, § 9, enacting cl [v] of Administrative Code § 13-271 [b] [1]).
 

 In 1989, plaintiffs commenced an action in Federal District Court alleging that these changes to the POVSF violated their due process rights and constituted an unconstitutional impairment of their Federal and State contract rights. That court dismissed the due process claims on the merits and subsequently dismissed the remainder of the action on abstention grounds, holding that the Federal Contract Clause claim would require the court to determine whether the original legislative enactment created a contractual obligation under State law, an issue that the Federal court recognized had not yet been decided by this Court
 
 (see, Ballentine v Koch,
 
 1991 WL 107810 [SD NY, June 7,1991, 89 Civ 2317]). Plaintiffs then commenced this action, asserting, as pertains to this appeal, claims under the Federal Contract Clause and the Pension Impairment Clause (art V, § 7) of the State Constitution and seeking a declaration that the 1970 legislation establishing the POVSF created a pension or retirement system and a declaration that the provisions of the 1988 legislation which changed the funding and payment structure of the POVSF, and authorized a transfer of funds from the POVSF to the City, were unconstitutional and unenforceable. In addition, plaintiffs sought injunctive relief directing the City to return the $75 million transferred from the POVSF pursuant to the 1988 enactment.
 

 After joinder of issue, defendants moved to dismiss the complaint for failure to state a claim (which the court treated as a motion for summary judgment) and plaintiffs cross-moved for an order dismissing defendants’ affirmative defenses and granting summary judgment in their favor. Supreme Court granted defendants’ motion and dismissed the complaint in its entirety, holding, in pertinent part, that the POVSF payments are not
 
 *56
 
 benefits of any retirement or pension system and thus, are not subject to article V, § 7 of the State Constitution. The Appellate Division affirmed (224 AD2d 320). Plaintiffs have appealed as of right pursuant to CPLR 5601 (b) (1) and we now affirm.
 

 Article V, § 7 of the NY Constitution protects as "a contractual relationship” the benefits of membership in a public pension or retirement system against diminishment and impairment. The provision "fix[es] the rights of the employees at the time of commencement of membership in [a pension or retirement] system, rather than as previously at retirement”
 
 (Matter of Guzman v New York City Employees’ Retirement Sys.,
 
 45 NY2d 186, 190-191, citing
 
 Birnbaum v New York State Teachers Retirement Sys.,
 
 5 NY2d 1, 9), and thus prohibits unilateral action by either the employer or the Legislature that impairs or diminishes the rights established by the employee’s membership
 
 (Matter of Village of Fairport v Newman,
 
 90 AD2d 293, 295,
 
 appeal dismissed
 
 58 NY2d 1112).
 

 In enacting the provisions creating and governing the POVSF, the Legislature declared that the fund "shall not be, and shall not be construed to constitute, a pension or retirement system or fund” (Administrative Code § 13-269 [b]) and that the supplemental payments authorized "shall not create or constitute membership in a pension or retirement system and shall not create or constitute a contract with any pension fund beneficiary or with any member of [the Police Pension Funds]” (Administrative Code § 13-271 [b] [2] [i]). The express purpose of these disclaimers was to "reserve! ] to the state of New York and [the Legislature] the right and power to amend, modify or repeal any or all of the provisions of [the Administrative Code governing the POVSF]” (Administrative Code § 13-269 [b]).
 

 Thus, by defining the POVSF as
 
 not
 
 a pension or retirement system, and by reserving to the Legislature the unilateral right to amend or repeal the POVSF statutory provisions, the 1970 legislation established a benefit scheme expressly outside the purview of article V, § 7.
 

 Plaintiffs nonetheless contend that despite the unequivocal legislative intent that the POVSF not be restricted by those constitutional limitations, public policy demands that we declare their POVSF benefits to be within the scope of article V, § 7. To support their argument, plaintiffs rely on evidence of the negotiating process that led to the 1970 legislation which
 
 *57
 
 they maintain demonstrates that the POVSF was originally intended to be, and was represented to PBA members as, a protected pension fund. However, neither the history of the 1970 legislation, nor public policy, provides support for plaintiffs’ claim.
 

 The POVSF grew out of contract negotiations between the City and plaintiffs’ bargaining representative, the Police Benevolent Association, over the collective bargaining agreement for the 1968-1970 contract period. A special panel that was convened to assist with negotiations following an impasse in the collective bargaining process proposed that a separate fund be created which would be funded from the investment earnings of the existing pension fund and which would provide supplemental benefits to some Police Pension Fund members. The City and the PBA eventually agreed to establish such a fund.
 
 (See generally, Castellano v Board of Trustees,
 
 937 F2d 752, 754.) This initial agreement led to proposed implementing legislation submitted as a negotiated bill to the Legislature in 1969
 
 (see,
 
 Veto Jacket, 1969 Assembly Bill A 6887, at 21 [letter from PBA President stating "(t)his bill * * * is the result of a
 
 collective bargaining
 
 procedure"] [emphasis in original];
 
 see also, id.,
 
 at 20 [letter from Mayor]). Although that initial proposal was vetoed by the Governor because it failed to provide for sufficient State oversight of the variable supplements fund (VSF)
 
 (see,
 
 Governor’s Mem vetoing 1969 Assembly Bill A 6887, Veto Jacket, at 1-2), it contained the statements now found in Administrative Code § 13-269 (b) and § 13-271 (b) (2), declaring the VSF not to be a pension or retirement system, and reserving to the Legislature the right to amend or repeal the affected Administrative Code provisions
 
 (see,
 
 1969 Assembly Bill A 6887). Moreover, the next year, two different versions of the implementing legislation were passed by the Legislature, differing in aspects not relevant to this appeal. The City supported one version of the implementing legislation (1970 Assembly Bill A 6508, the version eventually enacted into law) and the PBA supported the other (1970 Assembly Bill A 3798, which was vetoed by the Governor for essentially the same reason the 1969 enactment had been vetoed), and the union and the City disagreed as to which version was in fact the negotiated bill
 
 (see,
 
 Bill Jacket, L 1970, ch 876, at 3, 7; Veto Jacket, 1970 Assembly Bill A 3798, at 5, 8-9, 13, 14-15, 18). However, both versions again contained these same declarations of legislative intent as found in the original proposal and as ultimately enacted into law
 
 (compare,
 
 1970 Assembly Bill A
 
 *58
 
 6508 [City supported bill],
 
 with
 
 1970 Assembly Bill A 3798 [PBA supported bill]). Accordingly, the evidence demonstrates that the union and the City agreed to the implementing language that effectively took the POVSF outside the scope of article V, § 7’s protections.
 

 Plaintiffs’ attempt to demonstrate that the enacted language at issue here did not in fact represent the negotiated agreement is unavailing. The evidence upon which plaintiffs rely (such as a collective bargaining proposal submitted to PBA members in which the contemplated fund was labeled a "supplemental pension fund”) does no more than indicate that there may have been a lack of clarity on this issue in the collective bargaining documents. However, the suggestion that this demonstrates ambiguity as to the bargaining parties’ actual intent is dispelled by the subsequent legislative developments
 
 (see, Matter of Di Giacomo v City of New York,
 
 58 AD2d 347, 359-360 [Silverman, J., dissenting] [amendment enacted immediately following nonspecific collective bargaining agreement provides evidence of parties’ interpretation of their agreement],
 
 revd on dissenting opn of Silverman, J.,
 
 46 NY2d 894).
 

 Furthermore, although plaintiffs contend that they never specifically ratified the pertinent language in approving the contract, they have failed to demonstrate on this record that the PBA was acting outside the scope of its representational authority in agreeing to the statutory provisions at issue. Accordingly, because plaintiffs designated the PBA as their agent for the collective bargaining negotiations at issue here and were thus bound by its actions taken on their behalf during the negotiation process
 
 (see, Schacht v City of New York,
 
 39 NY2d 28, 32), the PBA’s waiver of the constitutional protections of article V, § 7 is valid as to plaintiffs, and bars their present claim, unless enforcement of that waiver otherwise violates public policy
 
 (id.; Matter of Carroll v Grumet,
 
 281 App Div 35, 37,
 
 mot to dismiss appeal granted and lv denied
 
 305 NY 692).
 

 We perceive of no public policy barring enforcement of the waiver in this case. We have previously held that a waiver of article V, § 7’s protections, as to funds ordinarily included in the calculation of pension benefits, does not in itself violate public policy, and that such a waiver may be implied from the plaintiffs’ course of conduct
 
 (Rosen v New York City Teachers’ Retirement Bd.,
 
 282 App Div 216,
 
 affd
 
 306 NY 625;
 
 see also, Matter of Carroll v Grumet, supra).
 

 
 *59
 
 Nor is there any general prohibition preventing the creation of benefits for retired public employees that exist separately from the applicable pension or retirement system
 
 (see, Matter of Lippman v Board of Educ.,
 
 66 NY2d 313 [employer funded health insurance benefits payable to retirees are not pension benefits within protection of article V, § 7];
 
 see also, Board of Educ. v Associated Teachers,
 
 30 NY2d 122, 128 [salary increment available for declaring intention to retire prior to last year of service is a term and condition of employment and not a benefit of the retirement plan];
 
 New York Pub. Interest Research Group v City of New York,
 
 89 Misc 2d 262 [fixed annuity payments held not to be retirement payments within the meaning of Retirement and Social Security Law § 113],
 
 affd
 
 63 AD2d 926,
 
 affd for reasons stated in Sup Ct opn
 
 48 NY2d 917).
 

 Moreover, given the parties’ intent that the supplemental payments would derive from the Pension Fund’s investment earnings, defendants cogently make the point that it was necessary to designate the POVSF as a nonpension benefit in order to foreclose a constitutional challenge whenever the members’ regular Pension Fund benefits were increased. Since an increase in the Pension Fund’s disbursements necessarily would affect that Fund’s assets, an increase in regular pension benefits disbursed from the Pension Fund would cause a decrease in the amount of money available for investment— the source of the earnings available for transfer to the POVSF. Thus, it is apparent that any regular pension increase would be subject to challenge as impairing the integrity of the POV-SF’s funding source in violation of article V, § 7 (cf.,
 
 McDermott v Regan,
 
 82 NY2d 354). It follows that, had the POVSF been designated part of the Pension Fund or as a separate pension or retirement system, it may have had the effect of freezing the members’ Pension Fund benefits, a result, to say the least, which would not have been within the willing contemplation of plaintiffs and the other members of the bargaining unit represented by the PBA in the POVSF negotiations.
 

 Against this background, the contradiction underlying plaintiffs’ challenge becomes evident: plaintiffs claim they are entitled to the benefits established by the collective bargaining agreement and the 1970 legislation, but in doing so, they attack as unenforceable an aspect of the legislation that was necessary to the creation of the rights they seek to enforce
 
 (cf., Schacht v City of New York, supra,
 
 39 NY2d, at 32).
 

 Furthermore, the characteristics of the fund created by the 1970 legislation, particularly the absence of a guaranteed fund-
 

 
 *60
 
 ing source and the virtually unlimited discretion regarding disbursements to eligible beneficiaries,
 
 [2]
 
 3**are inconsistent with the generally recognized characteristics of pension and retirement funds
 
 (see generally,
 
 1 Proskauer, Rose, Goetz & Mendelsohn, New York Employment Law § 18.02). Nor is there any merit to plaintiffs’ claim that the VSF must be designated a retirement or pension benefit to avoid being found an unconstitutional gift of municipal funds
 
 (see, Gagliardo v Dinkins, supra,
 
 at 74-75).
 

 In sum, because the PBA, on plaintiffs’ behalf, validly waived the protections of article V, § 7 in agreeing to the creation of POVSF benefits as nonpension benefits and to the Legislature’s unrestricted right to amend or repeal the statutory provisions governing the fund, plaintiffs may not now claim the protection of the Pension Impairment Clause.
 

 Finally, we reject plaintiffs’ claim premised on the Federal Contract Clause (US Const, art I, § 10, cl [1] ["No State shall * * * pass any * * * law impairing the obligation of contracts”]). Plaintiffs contend that the changes made by the 1988 legislation to the funding and payment structure of the POVSF unconstitutionally impaired the contractual rights established by the original implementing legislation.
 
 [3]
 

 Analysis of a Contract Clause claim begins with a determination of " 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship’ ”
 
 (Energy Reserves Group v Kansas Power & Light,
 
 459 US 400, 411, quoting
 
 Allied Structural Steel Co. v Spannaus,
 
 438 US 234, 244). However, where there is no existing contractual agreement regarding the terms changed by the legislation, there is no need to consider whether there was in fact an impairment and whether it was substantial
 
 (General Motors Corp. v Romein,
 
 503 US 181, 186 [enactment changing aspects of workers’
 
 *61
 
 compensation formula did not violate Federal Contract Clause because there was no contractual agreement regarding the specific terms affected]).
 

 As previously noted, under the original implementing legislation, the receipt of POVSF payments was made contingent on the existence of excess Pension Fund investment earnings and on the POVSF trustees’ exercise of discretion with respect to disbursements from the supplemental fund
 
 (see, supra,
 
 at 54, 60, n 2). Consequently, under this benefit scheme, plaintiffs were not assured that funds for supplemental payments would be available, or that the payments, if made, would be of a certain amount or continue for any specified duration, and in fact, no payments were made during the first five years of the POVSF’s existence. Moreover, the statute itself expressly stipulated that it did not create any contractual rights as to the POVSF payments.
 
 [4]
 
 Given the highly conditional and discretionary nature of the original benefit scheme, and the express statutory repudiation of any right to disbursements, plaintiffs are unable to demonstrate that the 1988 legislation changed any terms of an existing contractual relationship.
 

 Accordingly, the order of the Appellate Division, affirming Supreme Court’s dismissal of the complaint, should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith and Ciparick concur; Judge Bellacosa concurs on constraint of
 
 Poggi v City of New York
 
 (109 AD2d 265,
 
 affd
 
 67 NY2d 794) insofar as it controls the rationale and result in this case.
 

 Order affirmed, with costs.
 

 [1]
 

 . There are actually two Police Pension Funds, a subchapter 1 fund for police officers who were members of the police force before March 29, 1940, and a subchapter 2 fund for officers whose service began after that date (formerly known as the article 1 and article 2 funds). The POVSF is funded by transfers from the subchapter 2 fund, but its payments are available to eligible beneficiaries of both Police Pension Funds.
 

 [2]
 

 . As originally enacted, the Administrative Code provisions governing the POVSF stated: "No pension fund beneficiary shall have a right to receive variable supplements except to the extent, in the manner and for the period authorized by the [POVSF board of trustees] in the exercise of its discretion pursuant to this article and any such supplements granted may at any time be discontinued by the board in the exercise of such discretion” (Administrative Code former § B18-63.0 [b] [1]). The only limitation on the trustees’ broad discretion was the requirement that in exercising its discretion it consider "equity, fairness and principles of prudent management” (Administrative Code former § B18-63.0 [a]).
 

 [3]
 

 . Plaintiffs do not argue that the collective bargaining agreement established any different or additional rights to the POVSF; nor is there anything in the record before us to support such a claim.
 

 [4]
 

 . Administrative Code § 13-271 (b) (2) (i) (the granting and receipt of VSF payments "shall not create or constitute a contract with any pension fund beneficiary or with any member of [the Police Pension Funds]”).