*68
 
 OPINION OF THE COURT
 

 Levine, J.
 

 These cases involve challenges to the statutory scheme that created variable supplements funds (VSFs) to provide additional financial benefits to certain retirees of the New York City Housing Police and the New York City Transit Police, based on attainment of a statutorily defined period of service.
 
 [1]
 
 Plaintiffs in
 
 Gagliardo v Dinkins
 
 are retired New York City Housing Police Officers or Housing Police Superior Officers who receive New York City Employees’ Retirement System (NYCERS) pension benefits but are statutorily ineligible for Housing Police VSF benefits. Similarly, in
 
 Ranieri v Dinkins,
 
 plaintiffs are retired New York City Transit Police Officers or Transit Police Superior Officers who receive NYCERS pension benefits and who are ineligible for Transit Police VSF benefits.
 

 In major part, the challenges to the Housing and Transit Police VSFs replicate and require us to revisit a similar challenge to the VSFs earlier created for New York City Police Department retirees in
 
 Poggi v City of New York
 
 (109 AD2d 265,
 
 affd
 
 67 NY2d 794). First created in 1970 as a result of collective bargaining negotiations between the City of New York and union representatives for the City’s police officers, the VSF implementing legislation authorized the trustees of the Police Pension Fund, in their discretion, to invest assets of the pension fund in common stock rather than exclusively in high-grade fixed income debt securities (L 1970, ch 876, § 4 [amending former Administrative Code § B18-28.0];
 
 see also, Ballentine v Koch,
 
 89 NY2d 51 [decided herewith];
 
 Poggi v City of New York,
 
 109 AD2d, at 267-268,
 
 supra).
 
 As implemented, any net increase in investment earnings generated by such a change would be subject to distribution to service retirees,
 
 *69
 
 thereby providing supplemental benefits to these retirees without endangering the pension fund reserves that would have existed absent the legislative change (L 1970, ch 876;
 
 Poggi v City of New York, supra,
 
 at 268-272).
 

 Thus, by legislative design, the New York City Police VSFs were created and funded from the excess investment earnings of the Police Pension Fund. A statutory formula essentially defined as excess earnings those earnings from pension fund equity investments that, in any given year, exceeded the hypothetical earnings that would have resulted if the funds invested in equities had instead been invested in fixed income securities. Those excess earnings were then transferred to the Police VSFs, subject to offsets from losses in those years in which equity earnings did not exceed the hypothetical earnings and no transfer occurred
 
 (see,
 
 Administrative Code § 13-232;
 
 Poggi v City of New York, supra,
 
 at 267-268, 268, n 1).
 

 In 1987, similar systems were agreed to by the City and union representatives and then enacted to establish VSFs for eligible for service retirees of the New York City Housing and Transit Police Departments.
 
 [2]
 
 Under these arrangements, the Housing and Transit VSFs would, like the Police VSFs, receive funds in any year in which earnings from their NYCERS investments in stocks exceeded the hypothetical earnings from an equivalent amount of fixed income securities.
 
 [3]
 

 Thus, to the extent that the challenges here are based on the contention that the transfers of excess NYCERS investment earnings determined under the statutory formulas constitute a violation of the Pension Impairment Clause of the New York State Constitution (NY Const, art V, § 7), they parallel the issue necessarily decided in
 
 Poggi
 
 as to virtually identical legislation. In
 
 Poggi,
 
 the plaintiffs claimed that the allocation of transferable excess earnings, as set forth in section B18-27.1 (d) (1) of the (former) Administrative Code, diminished and impaired their pension contract benefits protected under article V, § 7. The Appellate Division held that their objection was invalid because none of the preexisting contractual benefits paid by the Police Pension Fund fluctuated or depended in any way upon the transferred excess investment earnings (109 AD2d, at 269-272,
 
 supra).
 
 This Court affirmed, agreeing with the reason
 
 *70
 
 ing of the Appellate Division that the VSF scheme did not violate the Impairment Clause. We noted in
 
 Poggi
 
 that this ruling rendered it unnecessary to reach the question whether these "[VSF] funds constitute a pension or retirement benefit”
 
 (Poggi v City of New York,
 
 67 NY2d, at 796,
 
 supra).
 

 In 1988, subsequent to the decision in
 
 Poggi,
 
 the New York City Police Department VSFs were converted to statutorily defined mandated benefit plans requiring payments to each eligible beneficiary on a fixed schedule beginning with a minimum amount and increasing annually until the year 2007.
 
 [4]
 
 The legislation also guaranteed payment of the VSF benefits by the City of New York regardless of the performance of the Police Pension Fund investments
 
 [5]
 
 and authorized the transfer of $75 million dollars from the New York City Police Officer’s VSF to the City of New York.
 
 [6]
 

 In 1992 and 1993, similar legislation amended the Administrative Code to establish a schedule of defined VSF benefits to eligible for service New York City Housing and Transit Police retirees.
 
 [7]
 
 As enacted, however, the defined benefit payments were not guaranteed and depended upon the existence of sufficient funds in the Housing and Transit Police VSFs. The legislation provided that only upon certification by the City Actuary that sufficient funds existed in the VSFs to make all annual payments through the year 2007, would the City of New York guarantee such payments.
 
 [8]
 
 In return for that guarantee, 15% of the VSFs’ assets were to be transferred to the City on a one-time basis.
 
 [9]
 
 Subsequently, the City Actuary made the respective determinations that sufficient funds existed for future payments through calendar year 2007, and
 
 *71
 
 15% of the Transit Police VSF assets were transferred to the City of New York. However, as to the Housing Police VSF, in 1994, the contingent guarantee provision and the 15% transfer provision were eliminated and the City of New York made an express guarantee of all payments to Housing Police VSF beneficiaries in consideration of a one-time transfer of $2,770,000 from the Housing Police VSF to the City.
 
 [10]
 

 In 1992, the
 
 Ranieri
 
 plaintiffs commenced one of these actions in Supreme Court seeking,
 
 inter alia,
 
 injunctive and declaratory relief. Plaintiffs then moved for partial summary judgment and defendants answered thé complaint and subsequently cross-moved for summary judgment in their favor on all claims. Supreme Court granted summary judgment to defendants and dismissed the complaint.
 

 In 1993, plaintiffs in
 
 Gagliardo
 
 commenced their action. Plaintiffs sought a preliminary injunction by order to show cause to enjoin defendants from making any defined benefit supplemental payments from the VSFs. Defendants raised defenses similar to those in the
 
 Ranieri
 
 action and cross-moved for summary judgment. Supreme Court granted defendants’ motion for summary judgment and dismissed the complaint.
 

 Plaintiffs in
 
 Ranieri
 
 and
 
 Gagliardo
 
 separately appealed the Supreme Court decisions and the Appellate Division consolidated the cases and unanimously affirmed (223 AD2d 371). This appeal as of right followed (see, CPLR 5601 [b] [1]).
 

 On appeal, the
 
 Ranieri
 
 plaintiffs argue that the legislative mandate to transfer excess earnings from the NYCERS pension fund into the Transit Police VSFs and the later transfer of 15% of the VSFs assets to the City impaired the integrity of the NYCERS pension system and divested the NYCERS Board of Trustees of its autonomous judgment and discretion with regard to NYCERS investments and earnings in violation of article V, § 7 of the State Constitution. Plaintiffs in
 
 Ranieri
 
 further allege that the payment of VSF benefits to eligible Transit Police retirees constituted an unconstitutional gift under article VIII, § 1 of the New York State Constitution.
 

 The
 
 Gagliardo
 
 plaintiffs allege,
 
 inter alia,
 
 that the transfer of assets from the Housing Police VSFs to the City of New York unconstitutionally impaired and diminished the NYCERS pension funds in violation of article V, § 7, and the limíta
 
 *72
 
 tions on eligibility for VSF benefits unconstitutionally discriminated against older or disabled retirees in violation of the Equal Protection Clause of the United States Constitution (US Const 14th Amend), the Americans with Disabilities Act (42 USC § 12101
 
 et seq.),
 
 and the New York State Human Rights Law (Executive Law § 296 [1] [a]).
 

 We now affirm.
 

 I
 

 In
 
 Ranieri,
 
 plaintiffs maintain,
 
 inter alia,
 
 that the transfer of excess investment earnings from the NYCERS pension fund into the VSFs constitutes a violation of the New York State Constitution’s Pension Impairment Clause. To this extent, the issue raised by plaintiffs is governed by the rationale adopted in
 
 Poggi v City of New York (supra)
 
 as the basis for rejecting the plaintiffs’ objection to the VSF legislation in that case.
 

 The Pension Impairment Clause provides,
 

 "[a]fter July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired” (NY Const, art V, §7).
 

 As was explained in Justice Sullivan’s majority opinion at the Appellate Division in
 
 Poggi,
 
 article V, § 7 merely "preserves the benefits of the pension contract relationship rather than 'naked pension rights
 
 qua
 
 rights’ ” (109 AD2d, at 269,
 
 supra,
 
 quoting
 
 Mutterperl v Levitt,
 
 89 Misc 2d 428, 431,
 
 affd
 
 41 NY2d 956). As held in
 
 Poggi,
 
 for the
 
 Ranieri
 
 plaintiffs to prevail on this claim, they must show that by reason of the formula-based transfer of excess investment earnings from the NYCERS pension fund to the VSFs "some benefit set forth in the pension contract of the Administrative Code is diminished or impaired”
 
 (Poggi v City of New York,
 
 109 AD2d 265, 269,
 
 supra).
 
 Here, as in
 
 Poggi,
 
 the statutory formula used to identify surplus investment earnings guaranteed that the pension fund corpus would not be impaired
 
 (see, id.,
 
 at 270-271). In fact, no provision of the statutory NYCERS pension contractual relationship requires the pension fund to pass on excess investment earnings to its members.
 
 [11]
 
 Hence, the subsequent transfer of surplus earnings had no impairment effect whatsoever on the
 
 Ranieri
 
 
 *73
 
 plaintiffs’ retirement benefits by way of reducing the employers’ statutory liability for contributions to the pension fund or in any other manner undermining the ability of NYCERS to meet plaintiffs’ retirement benefits or pension payment obligations to any other retirees
 
 (see,
 
 Administrative Code §§ 13-127, 13-133;
 
 Poggi v City of New York, supra,
 
 at 270-271).
 

 Plaintiffs, however, contend that the
 
 Poggi
 
 decision is not controlling here in light of our decisions in
 
 Sgaglione v Levitt
 
 (37 NY2d 507,
 
 rearg denied
 
 37 NY2d 924) and
 
 McDermott v Regan
 
 (82 NY2d 354). We disagree.
 
 Sgaglione v Levitt (supra),
 
 was decided before
 
 Poggi,
 
 and the Court in
 
 Poggi
 
 correctly concluded that
 
 Sgaglione
 
 did not require that formula-based transfers of excess investment earnings to VSFs be found unconstitutional. Nor does
 
 McDermott v Regan (supra). McDermott,
 
 in following
 
 Sgaglione,
 
 identified the critical inquiries as being whether the pension fund trustees’ discretion was eliminated in some material respect and whether that loss of discretion resulted in the danger of impairment of any reserve funds necessary to pay retirement benefits such as immediately reducing employers’ contributions which may later be essential to maintain the necessary level of pension benefits
 
 (see, McDermott v Regan,
 
 82 NY2d, at 360-362,
 
 supra).
 

 Sgaglione
 
 and
 
 McDermott
 
 hold that close judicial scrutiny is required of any radical alterations in the means chosen "to maintain the integrity and security of the sources from which the * * * protected benefits are to be paid”
 
 (id.,
 
 at 361, quoting
 
 Sgaglione v Levitt,
 
 37 NY2d, at 512,
 
 supra).
 
 Thus, in
 
 Sgaglione,
 
 we determined that the legislative mandate directing the investment of reserve funds in low investment grade municipal paper usurped the discretion of the State Comptroller (as sole trustee of the pension fund) and resulted in the impairment of the integrity of the pension fund
 
 (Sgaglione v Levitt, supra,
 
 at 511-513). Similarly, in
 
 McDermott,
 
 the legislative mandate that the State Comptroller adopt a radical funding method thereby permitting employers to deplete years of accrued assets in existing reserves in the State retirement system by reducing the amount of their contributions violated article V, § 7 of the State Constitution
 
 (McDermott v Regan, supra,
 
 at 360-363).
 

 There is no similar restriction on the trustees’ discretion or their autonomous judgment resulting in any possible impairment of the pension fund reserves here. Under the VSF legislation, the NYCERS trustees are not required, but are merely permitted, to invest in equity securities. Most notably, the
 
 *74
 
 amount of employer contributions to the NYCERS fund is totally unaffected by the legislation either directly or indirectly, and the statutory formula for the transfers of excess investment earnings guarantees that reserve funds will be maintained at a level equivalent to what would exist in the pension fund if all assets were invested in high-grade fixed income debt securities. In these ways, the financial integrity of the NYCERS pension reserves to assure the fund’s ability to meet its pension obligations is protected. Indeed, the legislation enacted in 1992 and 1993 is even more favorable to the accretion of NYC-ERS pension fund reserves, because no longer is the pension fund required to transfer all net excess investment earnings to the VSFs.
 
 [12]
 

 II
 

 Plaintiffs in
 
 Ranieri
 
 also argue that the transfer of VSF assets to New York City and the VSF benefit payments to those deemed eligible is an unconstitutional gift under article VIII, § 1 of the New York State Constitution.
 
 [13]
 
 Plaintiffs base this assertion on two statutory provisions: the VSF legislation itself which expressly declares that the variable supplements are not to be construed as pension fund or retirement system benefits;
 
 [14]
 
 and Civil Service Law § 201 (4) which excludes from the definition of " 'terms and conditions of employment’ * * * any benefits provided by or to be provided by a public retirement system, or payments to a fund or insurer to provide an income for retirees, or payment to retirees or their beneficiaries” (Civil Service Law § 201 [4]). Plaintiffs arguments are unpersuasive.
 

 The variable supplements fund payments at issue here were created through collective bargaining as additional future compensation for services actually rendered by police officers within the bargaining unit during the life of the agreement. In addition, these supplemental benefit payments also serve the important purpose of attracting and retaining qualified
 
 *75
 
 candidate-officers and providing an inducement to remain in active police service. Therefore, under settled principles, these payments do not constitute a gift in violation of article VIII, § 1 (see,
 
 e.g., Matter of Antonopoulou v Beame,
 
 32 NY2d 126, 131 [public moneys used to meet collective bargaining agreement obligations to officers and employees in the civil service are not an unconstitutional gift];
 
 Board of Educ. v Associated
 
 Teachers, 30 NY2d 122, 128 [collective bargaining agreement to provide a salary increase to teachers in their final year of employment prior to retirement serves legitimate purpose of inducing experienced teachers to remain in service];
 
 Hoyt v County of Broome,
 
 285 NY 402, 406-407 [continuation of salaries to government or municipal employees while in military service is a permissible incentive for public service]).
 

 Moreover, the constitutional prohibition on gifts of public funds is not necessarily subject to statutory definitions of terms or conditions of employment for purposes of governing labor-management relations between civil service employees and public or governmental employers under the Taylor Law (Civil Service Law § 200
 
 et seq.). (See also, Board of Educ. v Associated Teachers,
 
 30 NY2d 122, supra;
 
 New York Pub. Interest Research Group v City of New York,
 
 89 Misc 2d 262, 268,
 
 affd
 
 63 AD2d 926,
 
 affd on Sup Ct opn
 
 48 NY2d 917.) Thus, because the for service retirees receiving the supplemental payments have furnished a corresponding benefit to the City of New York, the compensatory VSF payments in consideration for those benefits to the municipality do not constitute an impermissible gift within the meaning of the Constitution.
 

 Ill
 

 Plaintiffs in
 
 Gagliardo
 
 also argue that the limitation on VSF eligibility to
 
 for service
 
 retirees improperly excludes officers who have retired as a result of disabilities, in violation of the Americans with Disabilities Act (42 USC § 12101
 
 et seq.)
 
 and the State Human Rights Law (Executive Law § 296 [1] [a]).
 

 To fall within the protection of the Americans with Disabilities Act (ADA), an individual must be otherwise qualified for participation in the benefit program of the public entity
 
 (see,
 
 42 USC § 12132). The term "qualified individual with a disability” is defined as an individual with a disability
 

 "who, with or without reasonable modifications to rules, policies, or practices, * * *
 
 meets the essential eligibility requirements for the receipt
 
 of ser
 
 *76
 
 vices or the participation in programs or activities provided by a public entity” (42 USC § 12131 [2] [emphasis supplied]).
 

 Therefore, each of the plaintiffs can only invoke the protection of the ADA if they are qualified individuals who meet the essential eligibility requirements but were "excluded from participation in” or "denied the benefits of the services, programs, or activities of a public entity * * * by any such entity” because of their disability (42 USC § 12132). Plaintiffs meet neither of these criteria.
 

 Eligibility for the benefits of VSF membership require a minimum of 20 years accredited service. Such a requirement precludes from benefits only officers with less than 20 years of credited service, not those who retired because of a disability. Consequently, the
 
 for service
 
 eligibility requirement does not discriminate against or burden disabled individuals in a manner different from or greater than the burdens it places on nondisabled individuals
 
 (see, Castellano v Board of Trustees,
 
 937 F2d 752, 755 [2d Cirj,
 
 cert denied
 
 502 US 941 [1991];
 
 see also, Traynor v Turnage,
 
 485 US 535, 548-550 [1988]).
 

 Under similar reasoning, we held that providing a disability pension program separate from a service pension does not violate the Human Rights Law’s prohibition against discrimination based on disability
 
 (Kuhnle v New York State Div. of Human Rights,
 
 40 NY2d 720,
 
 appeal dismissed sub nom. Kuhnle v O’Hagan,
 
 434 US 898 [1977]). Given the different needs of service and disability retirees and the unique benefits offered to each retirement classification, we cannot say that the for service limitation on VSF eligibility wrongly excludes disabled officers in violation of State law
 
 (see, Kuhnle, supra,
 
 at 723).
 

 IV
 

 Finally to be considered is plaintiffs’ contention that the subsequent transfer of a portion of the VSFs to the City of New York in exchange for its guarantee of definite VSF payments under the 1992 and 1993 legislation unconstitutionally impairs their NYCERS fund retirement benefits in contravention of article V, § 7. Initially, we note that plaintiffs concededly are not themselves eligible for payments from any VSF funds and, as already held, their constitutionally protected statutory retirement benefits are not impaired by the transfer of excess pension fund earnings to the VSFs. Thus, plaintiffs are not aggrieved by and lack standing to challenge the transfer of assets from the VSFs to the City of New York.
 

 
 *77
 
 To overcome the standing objection, plaintiffs argue that the combined 1987 and 1992-1993 VSF legislation is an unlawful scheme to divert pension funds to the City. First, as noted above, in the matter before us the City and participating employers are required by statute to maintain the NYCERS fund, through annual contributions, at a level which is actuarially sufficient to meet anticipated pension benefit payments irrespective of whether there are transfers of any excess investment earnings.
 
 [15]
 
 Thus, employer contributions remain unaffected by this legislation. We underscore that independent of any transfer of excess investment earnings to the VSFs, NYCERS can and must maintain a level of employer contributions sufficient to meet existing and anticipated pension fund obligations.
 

 Second, the record incontestably shows that the 1987 legislation which created the VSFs out of surplus investment earnings of NYCERS funds was entirely separate from and unrelated to the 1992 and 1993 modifications whereby VSF benefits from the already created VSFs were converted from discretionary payments to definite benefits on a fixed payment schedule.
 
 [16]
 
 Were there a statutory arrangement involving a simultaneous or sequential transfer of pension fund assets to a VSF and then a transfer of a portion thereof to the City of New York in exchange for some guarantee of VSF benefits, far graver questions would be presented, concerning the integrity of the pension fund assets and whether such a statutory scheme would work an effective reduction in employer contributions. Such a legislative arrangement would invoke serious concerns that it represented an attempt to achieve indirectly that which we have previously held in
 
 McDermott v Regan (supra)
 
 to be invalid when sought to be accomplished directly. We are not, however, called upon to address such concerns in this case. We have considered the plaintiffs’ remaining contentions and find them to be equally unpersuasive.
 

 Accordingly, in each action the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith and Ciparick concur; Judge Bellacosa concurs on constraint of
 
 Poggi
 
 
 *78
 

 v City of New York
 
 (109 AD2d 265,
 
 affd
 
 67 NY2d 794) insofar as it controls the rationale and result in these actions.
 

 In each action: Order affirmed, with costs.
 

 [1]
 

 . These retirees are statutorily termed "for service” retirees, as officers who have attained "twenty or more years of service toward the minimum [eligibility] period” for VSF payments
 
 (see,
 
 Administrative Code of City of NY § 13-191 [1] [c]; § 13-192 [1] [b]).
 

 [2]
 

 .
 
 See,
 
 L 1987, ch 844; L 1987, ch 846; Administrative Code § 13-191
 
 et seq.
 

 [3]
 

 .
 
 See,
 
 Administrative Code § 13-193 (1) (c) (defining transferable earnings with reference to the Police VSF transfer formula).
 

 [4]
 

 . See,
 
 L 1988, ch 247.
 

 [5]
 

 .
 
 See,
 
 L 1988, ch 247, § 9 (enacting clause [v] of Administrative Code § 13-271 [b] til).
 

 [6]
 

 .
 
 See,
 
 L 1988, ch 247, § 14. This legislation is the subject of a separate challenge in
 
 Ballentine v Koch
 
 (89 NY2d 51,
 
 supra).
 

 [7]
 

 .
 
 See,
 
 L 1992, ch 577; L 1993, ch 375, codified in section 13-191
 
 et seq.
 
 of the Administrative Code;
 
 see also,
 
 L 1994, ch 719 (establishing defined supplemental VSF benefits for Housing Police Superior Officers); L 1994, ch 720 (establishing defined supplemental VSF benefits for Transit Police Superior Officers). Since the Housing and Transit Police VSFs were created through almost identical legislation at approximately the same time, there exist two separate sets of sections numbered 13-191, 13-192, and 13-193 in the Administrative Code. As codified, one set specifically applies to the Housing Police VSFs and one set to the Transit Police VSFs.
 

 [8]
 

 .
 
 See,
 
 Administrative Code § 13-191 (3) (e)-(j).
 

 [9]
 

 .
 
 See,
 
 L 1992, ch 577, § 18 (b); L 1993, ch 375, § 18 (b).
 

 [10]
 

 . See, L 1994, ch 719, § 36; § 3, adding Administrative Code § 13-191 (3) (f) (3).
 

 [11]
 

 .
 
 See,
 
 Administrative Code § 13-133 (b).
 

 [12]
 

 .
 
 See,
 
 L 1992, ch 577, § 16 (adding Administrative Code § 13-193.2 [7] [transfers from the retirement system to the Transit Police Officer’s VSF related to the payment guarantee]); L 1993, ch 375, § 16 (adding Administrative Code § 13-193.4 [7] [transfers from the retirement system to the Housing Police Officer’s VSF related to the payment guarantee]).
 

 [13]
 

 . As one of their alternative arguments, the
 
 Gagliardo
 
 plaintiffs in their brief also contended that VSF benefits are a constitutionally prohibited gift. This argument, however, is unpreserved since the
 
 Gagliardo
 
 plaintiffs did not raise it in their complaint below.
 

 [14]
 

 .
 
 See,
 
 Administrative Code § 13-191 (2) (b); (4) (f) (2); § 13-192 (2) (b); (4) (b) (2).
 

 [15]
 

 .
 
 See,
 
 Administrative Code §§ 13-127, 13-133.
 

 [16]
 

 .
 
 See,
 
 L 1992, ch 577; L 1993, ch 375, respectively.