[762 NE2d 337, 736 NYS2d 651]

CRESCENZO DeLUCA, Respondent, v MARIE DeLUCA, Appellant.

Argued October 16, 2001; decided November 27, 2001

## POINTS OF COUNSEL

*Schapiro & Reich,* Lindenhurst (*Perry S. Reich* and *Steven M. Schapiro* of counsel), and *Robert A. Ross,* Kew Gardens, for appellant.

*Raoul Lionel Felder, P. C.,* New York City (*Myrna Felder* of counsel), for respondent.

*Queller, Fisher, Dienst, Serrins, Washor & Kool, L. L. P.,* New York City (*Richard A. Dienst, Elliot M. Rudick* and *Susan T. English* of counsel), for Detectives' Endowment Association, Inc. of the New York City Police Department and another, *amici curiae.*

*Michael D. Hess, Corporation Counsel* of New York City (*Stephen J. McGrath* and *Alan Beckoff* of counsel), for City of New

York, *amicus curiae.*

*Cooper, Bamundo, Hecht & Longworth, L. L. P.,* Brooklyn (*Steven Bamundo* and *James M. Caffrey* of counsel), for New York City PBA, *amicus curiae.*

**OPINION OF THE COURT**

CIPARICK, J.

In this case we must determine whether retirement benefits from the Police Superior Officers' Variable Supplements Fund (PSOVSF) are marital property subject to equitable distribution.

Crescenzo and Marie DeLuca were married on May 29, 1966. The following year, Crescenzo began his career with the New York City Police Department (NYPD), eventually attaining the rank of Detective, First Grade. Marie stopped working outside the home after the birth of the couple's first child. Thirty years later, Crescenzo filed this action for divorce. Before the judgment of divorce, Crescenzo retired from the NYPD after 31 years of service and began receiving PSOVSF benefits in addition to regular pension benefits.

Supreme Court granted Crescenzo a divorce and, as part of the equitable distribution of his assets, awarded Marie half of Crescenzo's past and future PSOVSF payments. The Appellate Division modified the award (276 AD2d 143), holding that

PSOVSF benefits were not marital property. It based that conclusion on language in the Administrative Code of the City of New York indicating that PSOVSF benefits were not pension benefits (*see*, Administrative Code of City of NY § 13-279 [b]). We granted leave to appeal (96 NY2d 752) and now reverse.

I

The PSOVSF, along with its counterpart for non-detective police officers below the rank of sergeant, the Police Officers' Variable Supplements Fund (POVSF), were the result of contract negotiations between the City of New York and the unions representing police officers. In 1968, both sides jointly proposed legislation allowing the Police Pension Fund, whose pension investments were limited to fixed-income obligations, to invest some of its assets in equities, such as common stock, with the hope of creating higher earnings. The additional earnings could then be used as extra post-retirement compensation to attract qualified individuals and induce long-term service (*see*, *Gagliardo v Dinkins*, 89 NY2d 62, 74-75). The Legislature responded by enacting chapter 876 of the Laws of 1970, which created the two Police Variable Supplement Funds (VSFs).[1]

Originally, the funds deposited into the VSFs represented the difference between the amount of money that the pension fund would have earned had all its investments been in fixed-income instruments and the amount actually earned from equity investments. In the years that equity investment income exceeded the hypothetical amount that would have been earned in fixed-income investments, a statutory formula divided the excess between the two funds (*see*, Administrative Code of City of NY § 13-232 *et seq.*). Conversely, the pension fund put no money into the VSFs in years when equity earnings were less than the hypothetical fixed-income earnings. Pursuant to statute, boards of trustees authorized payments from both VSFs in an amount and in such form as in their discretion they deemed appropriate.

With the enactment of chapter 479 of the Laws of 1993, the Legislature altered both the funding and payment structure of the PSOVSF. Most notably, instead of using an excess earn-

---

1. Chapter 876 was codified in the Administrative Code of the City of New York, currently at title 13, chapter 2, subchapters 3 and 4. These laws, like others that created VSFs, were enacted pursuant to a home rule request by the City of New York, which, under the Retirement and Social Security Law, lacks authority to alter laws relating to pension system investments.

ings formula, the amendment mandated the pension fund to place only as much money into the PSOVSF as was necessary to make benefit payments. In addition, the amendment replaced board of trustees' discretion as to benefit amounts with a fixed schedule of lump sum payments to eligible retirees (*see*, Administrative Code § 13-281 [b] [1]; *see also*, *Ballentine v Koch*, 89 NY2d 51 [documenting earlier parallel developments in the POVSF]).

Both VSFs are structurally linked to the Police Pension Fund. The money placed in the VSFs is derived from earnings on investments of the Police Pension Fund which, in turn, is partly funded by member contributions (*see*, Administrative Code § 13-232 *et seq.*). Moreover, to be eligible to receive distributions from the PSOVSF, a superior officer must be a "pension fund beneficiary" (*see*, Administrative Code § 13-281 [a] [2]).[2]

Notwithstanding its ties to the pension system, the Legislature has declared that the PSOVSF, like the other variable funds, is not, and should not be construed to be a pension fund (*see*, Administrative Code § 13-279). In cases examining VSFs of various uniformed services, we have recognized that such funds do not violate the State Constitution's pension-impairment clause (NY Const, art V, § 7) or the prohibition against making gifts of public funds (NY Const, art VIII, § 1; *see*, *Ballentine v Koch*, 89 NY2d 51, *supra*; *Gagliardo v Dinkins*, 89 NY2d 62, *supra*; *Poggi v City of New York*, 109 AD2d 265, *affd* 67 NY2d 794).

II

Whether the VSF benefits at issue here constitute marital property cannot be determined by the Administrative Code provisions relied on by the Appellate Division. Rather, that question must be answered by the relevant provisions of the Domestic Relations Law. If the benefit is a thing of value and was earned in whole or in part during the marriage, it may be considered marital property subject to equitable distribution.

Domestic Relations Law § 236 (B) (1) (c) defines "marital property" as "all property acquired by either or both spouses during the marriage and before the execution of a separation

2. For purposes of VSF eligibility, a "pension fund beneficiary" is "[a]ny person who receives a retirement allowance by reason of having retired * * * *for service* (with credit for twenty or more years)" (Administrative Code § 13-278 [5] [emphasis supplied]). Thus, one having retired for disability would not be eligible, even with more than 20 years of service.

agreement or the commencement of a matrimonial action, regardless of the form in which title is held." In identifying nothing less than "all property" acquired during the marriage as marital property, this section evinces an unmistakable intent to provide each spouse with a fair share of things of value that each helped to create and expects to enjoy at a future date (*see, DeJesus v DeJesus*, 90 NY2d 643). There is, in fact, a presumption of marital property "premised on the contemporary view of marriage as an economic partnership, crediting each party's contributions, whether monetary or not, to the growth and value of the marriage" (*id.*, at 648). Thus, marital property consists of "a wide range of intangible interests which in other contexts might not be recognized as divisible property at all" (*id.*, at 647).

In *Majauskas v Majauskas* (61 NY2d 481), we held that rights in a vested but non-matured pension were marital property. Much like the plaintiff here, the plaintiff police officer in *Majauskas* argued that pension rights were not marital property since they were not actually acquired until the pension matured on retirement which, in that case, occurred only after commencement of the divorce action. We disagreed, recognizing that "the Legislature intended the contribution of both spouses to the partnership to be recognized with respect to property acquired through the efforts of either" and, to that end, the equitable distribution statute required consideration of the " 'direct or indirect contribution made to the acquisition of such marital property by the party not having title, including * * * contributions and services as spouse, parent, wage earner and homemaker, and to the career or career potential of the other party' " (*Majauskas, supra*, 61 NY2d, at 489-490, quoting Domestic Relations Law § 236 [B] [5] [d] [6]; *see also, Burns v Burns*, 84 NY2d 369).

Thus, under the broad interpretation given marital property, formalized concepts such as "vesting" and "maturity" are not determinative. Indeed, we have held that compensation received after dissolution of the marriage for services rendered during the marriage is marital property (*see, Olivo v Olivo*, 82 NY2d 202).

At issue in *Olivo* were benefits received as part of an early retirement incentive. The package included a pension enhancement that allowed retirees to collect full pension benefits even though they had not worked the requisite number of years, a Social Security bridge payment that would provide a substitute for Social Security payments until the retiree became eligible,

and a separation payment. Appellants argued that they were entitled to an equitable share of each of their spouses' early retirement benefits because it was the employees' length of service, created through years of marriage, that made the employees eligible for the incentive. We rejected a blanket "length of service" rule, finding it could lead to absurd results. However, we recognized that a length-of-service requirement could be some evidence that the benefit in question is a form of compensation for past services. Effectuating the intent of Domestic Relations Law § 236 (B), we held that these post-divorce benefits were marital property to the extent that they were compensation for past services rendered during the marriage. In contrast, payments intended to compensate for events after the divorce, such as severance pay, were separate property not subject to equitable distribution (*id.*; *see also, Dolan v Dolan,* 78 NY2d 463 [distributing disability retirement benefits]).

Most recently, in *DeJesus v DeJesus* (90 NY2d 643, *supra*), we again demonstrated our preference for a view of marital property that emphasized the purpose of the post-retirement benefit. At issue in *DeJesus* were stock gift and stock option plans issued to a husband shortly before his wife commenced an action for divorce. Under the plans, the employer would issue stock, or the right to purchase stock, at future dates, assuming the husband stayed at his job. Although the husband argued that the plans were solely an incentive to continued employment and thus primarily separate property, we held that the stock plans might also be considered marital property if they represented compensation for past services. To the extent such plans were compensation for past services, the fact that they came into being shortly before the divorce was not determinative of their status as marital property (*DeJesus, supra*, 90 NY2d, at 652).

## III

The key question, therefore, is whether VSF benefits are intended as compensation for past services rendered during the marriage or another form of compensation, such as an incentive to continued employment, which is separate property post-divorce. We conclude that VSF benefits are a supplement to pension fund payments and, as such, a form of compensation for past services related to the first 20 years of police employment, notwithstanding the date they mature.

As evidence that they are a supplemental enhancement of retirement benefits, VSF payments are made only to service

retirees who are members of the pension system (Administrative Code § 13-281 [a] [2]). Moreover, the money in the VSF originates with the general pension fund and is subordinate to that fund in that the VSF may not impair rights of any member (*see*, Administrative Code § 13-232 *et seq.*). From its design, it is clear that the purpose of the VSF is to provide a supplement to the pension benefits of certain long-term uniformed employees (*Matter of Maye [Bluestein]*, 40 NY2d 113, 115). As we stated in *Gagliardo*, the funds are "additional future compensation for services actually rendered by police officers" (*supra*, 89 NY2d, at 74).

Because VSF benefits are compensation for past services, they do not raise the same concerns as *Olivo* about reliance on the "length of service" measure of marital property (*see*, *Olivo*, *supra*, 82 NY2d, at 208). The wife here is not claiming a share of a new benefit conferred after the marriage. Rather, the benefits at issue here are compensation for the husband's past employment services while the couple was still married. To the extent those past services occurred during the marriage, the non-titled spouse should receive an equitable share of this deferred compensation-type fund.

While issues such as "vesting" and "maturity" do not raise serious obstacles to the determination that VSF benefits are marital property, they do affect valuation and distribution. Courts, however, are capable of fashioning domestic relations orders that equitably distribute the proceeds of future contingencies, if and when they are realized. Because it held that PSOVSF benefits were separate property, the Appellate Division in this case did not pass on the merits of the 50% equitable distribution, and should consider this issue on remittal.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and case remitted to that court for further proceedings in accordance with this opinion.

Chief Judge KAYE and Judges SMITH, LEVINE, WESLEY, ROSENBLATT and GRAFFEO concur.

Order, insofar as appealed from, reversed, etc.