Peter CASTELLANO, et al.,
Plaintiffs–Appellants,

v.

The CITY OF NEW YORK, et al., Defendants–Appellees.

Ronald GRABOSKI, et al.,
Plaintiffs–Appellants,

v.

Rudolph GUILIANI, et al.,
Defendants–Appellees.

Alphonse ADORNETTI, et al.,
Plaintiffs–Appellants,

v.

NEW YORK CITY EMPLOYEES RETIREMENT SYSTEM, et al., Defendants–Appellees.

John A. CLIFFORD, et al.,
Plaintiffs–Appellants,

v.

NEW YORK POLICE PENSION FUND, et al., Defendants–Appellees.

Serafino F. VELARDI, Plaintiff–Appellant,

v.

The NEW YORK CITY FIRE DEPARTMENT PENSION FUND, Defendant–Appellee.

Nos. 96–7920, 96–9004(CON), 96–9257, 96–9289, 96–9601, 96–9237.

United States Court of Appeals, Second Circuit.

Argued June 9, 1997.

Decided Feb. 24, 1998.

Dolgow, Anshel David, Marta B. Soja, of counsel, on the brief) for Municipal Defendants–Appellees in Docket Nos. 96–7920 and 96–9004(CON).

Martin Bienstock, Assistant Attorney General, New York City (Dennis C. Vacco, Attorney General of the State of New York, Barbara G. Billet, Solicitor General, Thomas D. Hughes, Assistant Solicitor General, of counsel, on the brief), for State Defendants–Appellees in Docket Nos. 96–7920 and 96–9004(CON).

Elliot I. Susser, Lysaght, Lysaght & Kramer, P.C., Lake Success, NY, for Defendants–Appellees The Patrolmen's Benevolent Association of the City of New York and their Trustees on the Police Pension Fund in Docket Nos. 96–7920 and 96–9004(CON).

Jennifer S. Goldstein, Washington, DC (C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, on the brief) Amicus Curiae, for Equal Employment Opportunity Commission in Docket Nos. 96–7920 and 96–9004(CON).

Edward Copeland, Cary Lacheen, New York Lawyers for the Public Interest, New York City, Robert L. Schonfeld, Stein & Schonfeld, New York City, Amicus Curiae, for American Civil Liberties Union, et al. in Docket Nos. 96–7920 and 96–9004(CON).

Richard A. Dienst, Leslie H. Ben–Zvi, Dienst & Serrins, LLP, New York City, for Defendants–Appellees Detectives' Endowment Association, Captains' Endowment Association, Sergeants' Benevolent Association and Lieutenants' Benevolent Association, New York City Police Department in Docket Nos. 96–7920 and 96–9004(CON).

Kevin P. Fitzpatrick, Williston Park, NY (Kevin P. Fitzpatrick, P.C., Williston Park, NY, Martin N. Silberman, Marc Alain Steier, Silberman & Rhine, P.C., New York City, on the brief) for Plaintiffs–Appellants in Docket No. 96–9257.

James J. Dwyer, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, John Hogrogian, Pamela Seider Dolgow, Anshel David, Marta B. Soja, of

Ronald Podolsky, Hauppauge, NY, for Plaintiffs–Appellants in Docket Nos. 96–7920 and 96–9004(CON).

Irving Anolik, New York City, for Plaintiff–Appellant Peter Harris in Docket Nos. 96–7920 and 96–9004(CON).

James J. Dwyer, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, John Hogrogian, Pamela Seider

counsel, on the brief), for Municipal Defendants–Appellees in Docket No. 96–9257.

Tina Kremenezky, New York City (Richard M. Betheil, Pryor, Cashman, Sherman & Flynn, New York City, joining in the brief for Municipal Appellees), for Defendant–Appellee Uniformed Fire Officers Association and Uniformed Fire Officers Association Executive Board in Docket No. 96–9257.

Michael N. Block, New York City (Sullivan & Liapakis, New York City), for Defendants–Appellees Uniformed Firefighters Association and Trustees in Docket No. 96–9257.

Daniel T. Campbell, P.C., Daniel T. Campbell, Floral Park, NY, for Amicus Curiae COAPP–VSF, Inc. in Docket No. 96–9257.

Martin N. Silberman, New York City (Silberman & Rhine, P.C., New York City, Kevin P. Fitzpatrick, Kevin P. Fitzpatrick, P.C., Williston Park, NY, on the brief), for Plaintiffs–Appellants in Docket No. 96–9289.

James J. Dwyer, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, John Hogrogian, Pamela Seider Dolgow, Anshel David, Marta B. Soja, of counsel, on the brief), for Municipal Defendants–Appellees in Docket No. 96–9289.

Tina Kremenezky, New York City (Richard M. Betheil, Pryor, Cashman, Sherman & Flynn, New York City), for Defendant–Appellee Uniformed Fire Officers Association and Uniformed Fire Officers Association Executive Board in Docket No. 96–9289.

Michael N. Block, New York City (Sullivan & Liapakis, New York City), for Defendants–Appellees Uniformed Firefighters Association and Trustees in Docket No. 96–9289.

Dennis C. Vacco, Attorney General of the State of New York, New York City, Barbara G. Billet, Solicitor General, Thomas D. Hughes, Assistant Solicitor General, Martin Bienstock, Assistant Attorney General, of Counsel, New York City, for State Defendants–Appellees in Docket No. 96–9289.

John A. Clifford, Pro Se, Long Beach, NY, in Docket No. 96–9601.

James J. Dwyer, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, John Hogrogian, of counsel), for

Municipal Defendants–Appellees in Docket No. 96–9601.

Serafino F. Velardi, Pro Se, Port St. Lucie, FL, in Docket No. 96–9237.

John Hogrogian, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, New York City), for Defendant–Appellee in Docket No. 96–9237.

Before: OAKES, WALKER, and PARKER, Circuit Judges.

WALKER, Circuit Judge:

In this appeal, various classes of police and fire officers in New York City who retired with disability pensions press their claims, rejected below, that the city and applicable pension funds are discriminating against them by denying them benefits from more lucrative variable supplement funds ("VSF") that are available only to retirees who retire after twenty years of service and who do not already receive disability pensions. This appeal also presents the threshold issue of whether a retiree on disability who is presently unable to perform the "essential functions" of his former employment can still be a "qualified individual with a disability" within Title I of the Americans with Disabilities Act for the purpose of challenging alleged discrimination in the provision of fringe benefits. We answer this threshold question in the affirmative; however, with one exception we agree with the district courts that there is no disability discrimination in these cases and thus the motions to dismiss by defendants-appellees were properly granted. We also address and reject appellants' various arguments challenging the VSF statutory scheme under the United States Constitution and other federal statutes.

The following are the different groups of appellants, the judgments they have appealed from, and their claims before this court.

Plaintiffs-appellants Peter Castellano et al. ("Castellano appellants") appeal from the June 28, 1996 judgment by the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge* ) dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), their complaint under Titles I and II of the Americans with Disabilities Act ("ADA") of 1990,

42 U.S.C. § 12101 *et seq.,* section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.,* the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621 *et seq.,* the First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution, and various claims under New York law. (No. 96–7920). *See Castellano v. City of New York,* 946 F.Supp. 249 (S.D.N.Y. 1996).

Plaintiffs-appellants Ronald Graboski *et al.* ("Graboski appellants") and Serafino F. Velardi ("Velardi") appeal from the September 5, 1996 judgment by the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), the Graboski appellants' complaint under Titles I and II of the ADA, section 504 of the Rehabilitation Act, the ADEA, the Contracts Clause, the Equal Protection Clause of the Fourteenth Amendment, and various claims under New York law, (No. 96–9257), and dismissing Velardi's complaint under Title I of the ADA. (No. 96–9237). *See Graboski v. Guiliani,* 937 F.Supp. 258 (S.D.N.Y.1996).

Plaintiffs-appellants Alphonse Adornetti *et al.* ("Adornetti appellants") appeal from the September 9, 1996 judgment by the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *Judge*) dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), their complaint under Titles I and II of the ADA, section 504 of the Rehabilitation Act, the Contracts Clause, the Equal Protection Clause of the Fourteenth Amendment, the Takings Clause, and various claims under New York law. (No. 96–9289). *See Adornetti v. New York City Employees' Retirement Sys.,* No. CV 95–3842, 1996 WL 518097 (E.D.N.Y. Aug. 28, 1996).

Plaintiffs-appellants John A. Clifford *et al.* ("Clifford appellants") appeal from the March 6, 1997 judgment by the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge*) dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), their complaint under Title I of the ADA. (No. 96–9601). *See Clifford v. New York City Police Pension Fund,* No. 96–CV–6806 (S.D.N.Y. Mar. 6, 1997).

Plaintiff-appellant Peter Harris ("Harris") appeals from the July 17, 1996 judgment by the United States District Court for the Southern District of New York (Kevin Thomas Duffy, *Judge*) dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), Harris's complaint under Title I of the ADA. *See Houlihan v. City of New York,* No. 95–CV–6373, 1996 WL 393576 (S.D.N.Y. July 15, 1996). Harris's appeal has been consolidated with the Castellano appeal, is included in the Castellano caption, and has the docket number 96–9004. Harris's ADA claim is considered together with that of the Castellano appellants.

We affirm all of the above judgments (Nos. 96–7920, 96–9257, 96–9289, 96–9601, 96–9004) except for the judgment dismissing Velardi's complaint (No. 96–9237), which we vacate and remand for further proceedings.

### *Background*

We set forth here only as much background as is necessary to the disposition of these appeals, all of which relate to the administration of VSFs to various classes of New York City police and fire officers.

A VSF benefit is a variable supplemental benefit disbursed to certain city retirees in addition to regular pension or retirement benefits, and funded by the investment earnings of various police and fire officer pension funds. *See, e.g.,* N.Y.C.Admin. Code ("Code") §§ 13–232, 13–335. There are five VSFs relevant to these consolidated appeals: Code at § 13–268 to § 13–278 (police officers' VSF), § 13–278 to § 13–287 (police superior officers' VSF), § 13–382 to § 13–391.1 (firefighters' VSF), § 13–392 to § 13–401 (fire officers' VSF), and § 13–191 to § 13–193.5 (transit police officers' VSF). With the exception of the transit police officers' VSF, these VSFs originated directly from collective bargaining agreements ("CBAs") adopted in 1968 and 1970 between a number of police and fire officer associations and New York City, and implemented into law in 1970.

For all of the above classes of police and fire officers, there exist three basic types of retirement plans: (1) "ordinary disability" retirement for those who are "physically or

mentally incapacitated for the performance of duty and ought to be retired," Code at §§ 13–251, 13–352; (2) "accident disability" retirement for those whose physical or mental incapacitation is a "natural and proximate result" of city-service, Code at §§ 13–252, 13–353; and (3) "for service" retirement for those who have served for twenty years and who do not elect to retire with disability benefits. Code at §§ 13–246, 13–247, 13–349, 13–350. Only "for service" retirees are eligible for VSF benefits. Code at §§ 13–268, 13–278, 13–382, 13–392. In addition, only retirees who retired after various VSF-eligibility dates (that differ among the VSFs) may receive VSF benefits.

In recent years, the VSFs have been steadily increasing in value, thereby increasing the relative amount of total payments received by "for service" retirees as compared with retirees under disability plans and retirees who retired before the applicable VSF-eligibility effective dates. Appellants now assert an entitlement, under federal and New York statutes and the United States Constitution, to a piece of the growing VSF pie. The following are the material facts unique to the separate appellant groups.

### A. *Castellano v. City of New York* (No. 96–7920)

The factual background in this case is extensively set forth in *Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund*, 937 F.2d 752 (2d Cir.1991), and *Castellano v. City of New York*, 946 F.Supp. 249 (S.D.N.Y.1996). The Castellano appellants are approximately 2,000 disabled retired New York City police officers who receive benefits from the New York City Police Pension Fund, but who retired with "ordinary" or "accident disability" and are therefore ineligible to receive VSF benefits. Only "for service" retirees who retired on or after October 1, 1968 are eligible to receive VSF benefits. Code at §§ 13–268(5), 13–278(5).

Appellants fall into two broad groups: disabled retirees who did not satisfy the twenty-year service requirement for receiving VSF benefits ("Class I retirees"); and retirees

who served for twenty years but whose voluntary election to retire with disability precluded them from receiving additional "for service" VSF benefits ("Class II retirees"). Although it is undisputed that the Castellano appellants are receiving the retirement benefits to which they are entitled by the Code, they assert two principal federal claims to an entitlement to the VSF benefits: first, that the exclusion of both Class I and Class II retirees from VSF-benefit eligibility constitutes discrimination on the basis of disability in violation of Titles I and II of the ADA and section 504 of the Rehabilitation Act; and second, that the statutory limitation of VSF payments to those who retired on or after October 1, 1968 violates the ADEA. In dismissing appellants' complaint, pursuant to Fed.R.Civ.P. 12(b)(6), the district court rejected these claims. The Castellano appellants also assert various New York state law claims over which the district court declined to exercise supplemental jurisdiction. *See id.*

### B. *Graboski Appellants* (No. 96–9257)

The factual background in this case is extensively set out in *Graboski v. Guiliani*, 937 F.Supp. 258 (S.D.N.Y.1996). The Graboski appellants are disabled retired New York City firefighters and fire officers who are not eligible to receive VSF benefits from the New York City Fire Department Pension Fund. The firefighter and fire officer VSFs originated in CBAs adopted on October 1, 1968 and June 2, 1970 between the Uniformed Firefighters' Association ("UFA") and Uniformed Fire Officers' Association ("UFOA") and New York City. In 1970, these CBAs were implemented into law. *See* Act of May 18, 1970, 1970 N.Y.Laws ch. 877, §§ B19–43.0, B19–63.0. The legislature has since made further changes to the statutory scheme, including limiting VSF payments to those who retired on or after October 1, 1968. *See, e.g.,* Act of July 26, 1993, 1993 N.Y.Laws ch. 480; Code at § 13–392(6).

The Graboski appellants comprise three groups: Class I retirees—retirees with "ordinary" or "accidental" disability pensions who served less than twenty years, Class II retirees—retirees with twenty years of service who elected to retire with disability retire-

ment, and retirees ineligible for VSF benefits because they retired before October 1, 1968. The Graboski appellants assert three principal federal claims: first, that the exclusion of both Class I and Class II retirees from VSF-benefit eligibility discriminates against them on the basis of disability in violation of Titles I and II of the ADA and section 504 of the Rehabilitation Act; second, that the statutory limitation of VSF payments to those who retired on or after October 1, 1968 violates the ADEA; and finally, that under the CBAs disability retirees were contractually intended to be VSF beneficiaries and that various later amending legislation restricting VSF-benefit eligibility violates the Contract and Equal Protection Clauses of the United States Constitution. In dismissing appellants' complaint, pursuant to Fed.R.Civ.P. 12(b)(6), the district court rejected these claims. *See Graboski v. Guiliani*, 937 F.Supp. 258, 270 (S.D.N.Y.1996). The Graboski appellants also assert various New York state law claims over which the district court declined to exercise supplemental jurisdiction. *See id.*

### C. *Adornetti Appellants* (No. 96–9289)

The factual background in this case is set out in *Adornetti v. New York City Employees' Retirement Sys.*, No. 95–CV–3842, 1996 WL 518097, at *1 (E.D.N.Y. Aug. 28, 1996). Appellants are approximately 800 former New York City Transit Police officers who are ineligible to receive benefits from the transit police officers' VSF. *See generally,* Code at § 13–191 to § 13–193.5 (Code provisions relating to transit police officers' VSF).

The transit police officers' VSF, according to the Adornetti appellants, originated in a CBA adopted in 1968 between the Patrolman's Benevolent Association ("PBA") and New York City. Although that CBA by its terms did not apply to transit police officers (but rather to members of another police pension fund), appellants claim a contractual entitlement to whatever benefits the CBA conferred, pursuant to § 13–157(j)(2) of the Code. In 1987, the transit police officers' VSF, explicitly limiting VSF-benefit eligibility to "for service" retirees, was implemented into law. *See* Act of Aug. 10, 1987, 1987

N.Y.Laws ch. 844. The transit police VSF-eligible effective date is July 1, 1987. *See* Code at § 13–191(1)(c).

The Adornetti appellants fall into three groups: Class I retirees—disabled retirees who served less than twenty years, Class II retirees—disabled retirees with twenty years of service who elected to retire with disability retirement, and retirees ineligible to receive VSF benefits because they retired before July 1, 1987. Before the district court, the Adornetti appellants claimed entitlement to VSF benefits under Title I of the ADA, section 504 of the Rehabilitation Act, the Contract, Equal Protection, and Takings Clauses of the United States Constitution, and under various New York state law causes of action. In dismissing the Adornetti appellants' complaint pursuant to Fed. R.Civ.P. 12(b)(6), the district court adopted the reasoning of the district court in *Castellano v. City*, 946 F.Supp. at 249, rejected appellants' federal claims, and declined to exercise supplemental jurisdiction over their New York claims. *See Adornetti*, 1996 WL 518097, at *1–2. Before this court, appellants assert only the ADA, Rehabilitation Act, Contract Clause, and New York state law claims.

### D. *The Clifford Appellants* (No. 96–9601)

The Clifford appellants are six former New York City police officers who are ineligible to receive VSF benefits either because they have not completed twenty years of service (Class I retirees) or because they retired with disability after twenty years of service (Class II retirees). Because their claim under Title I of the ADA is identical to that of the Castellano appellants, Judge Stein adopted the reasoning of his opinion in *Castellano v. City of New York*, 946 F.Supp. at 249, in dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), the Clifford appellants' ADA claim. *See Clifford v. New York City Police Pension Fund*, No. 96–CV–6806 (S.D.N.Y. Mar. 6, 1997).

### E. *Velardi Case* (No. 96–9237)

Velardi alleges that he served twenty years as a firefighter and that the New York City Fire Department ("NYFD") Pension

Fund discriminated *among* twenty-year retirees on the basis of disability, denying "additional [VSF] benefit[s]" only to himself and other disabled firefighter retirees in violation of Title I of the ADA. Record on Appeal ("ROA") No. 96–9237, doc. 1 at 5. After Velardi moved for summary judgment, NYFD moved to dismiss Velardi's complaint under Rule 12(b)(6), claiming (i) that Velardi was not a "qualified individual with a disability" within Title I because he could no longer perform the essential functions of his former employment, and (ii) that the VSF scheme discriminates not on the basis of disability, but on the basis of years served. Although Velardi claimed that he did not apply for "for service" retirement because it was never offered to him and he was unaware of the option, *see* ROA No. 96–9237, doc. 46 at 35, Judge Kaplan consolidated Velardi's case with the Graboski case and, finding Velardi on "equal footing" with the Graboski appellants, *Graboski*, 937 F.Supp. at 268, granted NYFD's Fed.R.Civ.P. 12(b)(6) motion to dismiss Velardi's complaint. Velardi now appeals.

*Discussion*

## I. *Standard of Review*

■ This court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), *see Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996), and will affirm such a dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (internal quotation marks and citation omitted). We must take "as true the facts alleged in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994).

## II. *The ADA and Rehabilitation Act Claims: "Qualified Individuals" under Title I*

All appellants in these actions allege federal disability claims pursuant to Title I of the ADA and, with the exception of the Clifford appellants and Velardi, all allege claims under Title II of the ADA and section 504 of the Rehabilitation Act.

■ The district courts in the cases before us are divided over whether appellants, all of whom are former city employees and most of whom who can no longer perform the "essential functions" of their former employment, are "qualified individual[s] with a disability" within Title I of the ADA for the purpose of challenging alleged discrimination in employer-related fringe benefits. *See Castellano v. City of New York*, 946 F.Supp. at 252–53; *Graboski*, 937 F.Supp. at 266. Title I prohibits an employer or labor organization from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a), including the provision of fringe benefits. *See* 42 U.S.C. § 12112(b)(2). "Qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In *Castellano v. City*, the district court determined that disabled retirees, who no longer "hold[ ]" "employment position[s]" and who can no longer "with or without reasonable accommodation . . . perform the essential functions" of their former employment, do not fall within the plain language of the ADA. 946 F.Supp. at 252–53 (citing 42 U.S.C. § 12111(8)). Appellees urge us to endorse this approach, which has been adopted by three circuits in the context of challenges to alleged discrimination in the provision of fringe benefits. *See Gonzales v. Garner Food Servs., Inc.*, 89 F.3d 1523, 1526–28 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997); *EEOC v. CNA Ins. Cos.*, 96 F.3d 1039, 1042–45 (7th Cir.1996); *Parker v. Metropolitan Life Ins. Co.*, 99 F.3d 181, 185–87 (6th Cir.1996), *aff'd,* 121 F.3d 1006 (6th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998). Title I of the

ADA, however, expressly prohibits discrimination in the provision of fringe benefits, *see* 42 U.S.C. § 12112(b)(2), and certain fringe benefits such as pensions and VSF benefits are provided only post-employment and are meaningful only in that context. This led the district court in *Graboski* to conclude that it would be illogical for the ADA to exclude the period following employment just "when the employment benefits are to be reaped." *Graboski,* 937 F.Supp. at 266.

█ In interpreting a statute, we first consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, ——, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). Where the language is ambiguous, we focus upon the "broader context" and "primary purpose" of the statute. *Id.* at ——, 117 S.Ct. at 848. Section 12111(8) defines a "qualified individual with a disability" as an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). It fails to specify *when* a potential plaintiff must have been a "qualified individual with a disability" in the context of a claim that the provision of retirement or fringe benefits is discriminatory. The House committee report accompanying the ADA adds that a "determination of whether a person is qualified should be made at the time of the [discriminatory] employment action, *e.g.* hiring or promotion, and should not be based on the possibility that the employee or applicant will become incapacitated and unqualified in the future," H.R.Rep. No. 101–485(III), at 34 (1990), *reprinted in* 1990 U.S.C.C.A.N. 456, and in doing so, focuses on the situation where the inability to perform essential functions may not have arisen at the time of the discriminatory employment action.

The cases *sub judice,* however, involve employment actions taken not only after the plaintiffs were no longer employees but after many of the plaintiffs had lost the ability to perform the essential functions of their former employment. A literal reading of the committee report suggests that "at the time of the employment action" refers to the actual moment when the employer performs the discriminatory act, in this case, withholds or provides unequal fringe benefits. Such a reading, however, would permit employers to discriminate freely against disabled retirees who had been "qualified individuals" up to the point of retirement, but who (i) no longer held employment positions, and/or (ii) were no longer able to perform the essential functions of their former employment due to infirmity. Under reading (i), for example, an employer could terminate an employee in violation of the ADA and then deny him fringe benefits, yet the employee could bring no ADA claim for the latter violation because at the time of the discriminatory denial of fringe benefits he was a former employee who did not "hold" an "employment position." The first reading would also permit an employer to deny post-employment fringe benefits on the basis of disability to any retiree the day after (but not the day before) his retirement. Reading (ii) would permit irrational discrimination as between disabled retirees, some of whom (for whatever reason) could still perform the essential functions of their former employment and others of whom could not. This analysis only underscores the difficulty of defining any temporally discrete, discriminatory "employment action" in the context of the provision of fringe benefits. The fact is that many fringe benefits are earned during years of service before the employment has terminated but are provided in years after the employment relationship has ended.

Looking beyond this inconclusive and unsatisfactory legislative history, we turn to the purpose underlying inclusion of the "essential functions" requirement within the definition of "qualified individual with a disability." Congress has stated its purpose to be "to ensure that employers can continue to require that all applicants and employees, including those with disabilities, are able to perform the essential, i.e., the non-marginal functions of the job in question." H.R.Rep. No. 101–485(II), at 55 (1990), *reprinted in* 1990 U.S.C.C.A.N. 337; S.Rep. No. 101–116, *reprinted in* Arnold & Porter Legislative History P.L. 101–336, Americans with Disabilities Act of 1989, at 26 (1989). Congress

used the phrase "qualified individual with a disability" to "reaffirm that [the ADA] does not undermine an employer's ability to choose and maintain qualified workers," *id.;* H.R.Rep. No. 101–485(II), at 55 (1990), *reprinted in* 1990 U.S.C.C.A.N. 337, and to allow employers to "select the most qualified applicant available" rather than be obliged to "prefer applicants with disabilities over other applicants on the basis of disability." H.R.Rep. No. 101–485(II), at 56 (1990), *reprinted in* 1990 U.S.C.C.A.N. 338; S.Rep. No. 101–116, *reprinted in* Arnold & Porter Legislative History P.L. 101–336, Americans with Disabilities Act of 1989, at 26–27 (1989). Congress was concerned that employers not be forced to hire, promote, or retain unqualified, disabled employees.

Where the alleged discrimination relates to the provision of post-employment benefits, rather than to hiring, promotion, or firing, Congress's expressed concern about qualifications is no longer implicated. Because retired employees who receive fringe benefits no longer work or seek to work for their former employers, they plainly need not perform the essential functions, or indeed *any* functions, of their former employment. Provided that retired employees were qualified (i.e., performed the "essential functions" of their jobs) while employed and on that basis became entitled to post-employment benefits, the purpose of the "essential functions" requirement has been met. In the instant case, appellants who performed the "essential functions" of their former employment for a period of twenty years and who selected a "for service" retirement plan would be entitled under the ADA to non-discriminatory treatment in the provision of VSF benefits. Because fringe benefits are earned for actual service in employment, it is irrelevant whether former employees, otherwise eligible for fringe benefits, could *also* perform such essential functions at or after termination of their employment.

We note that the Seventh Circuit distinguished post-employment benefits claims from Title VII antiretaliation claims (where concededly former employees had standing) on the ground that the "protected interest of the former employee [in not facing post-employment retaliation] arose during the period of employment" only in the latter case. *CNA,* 96 F.3d at 1045. It is plain to us, however, that an employee's entitlement to post-employment fringe benefits arises (as much or more so than does his interest in not facing post-employment retaliation) during his period of employment.

An interpretation that would prevent former employees who are no longer "qualified individuals" from bringing claims of discrimination in the provision of post-employment fringe benefits would also undermine the plain purpose of sections 12112(a) and (b)(2): to provide comprehensive protection from discrimination in the provision of fringe benefits. *See* 42 U.S.C. §§ 12112(a), (b)(2). Many fringe benefits are paid out to those who no longer work and who are no longer able to work, and some fringe benefits are paid out to individuals precisely because they can no longer work. Under appellees' reading, none of these individuals would be protected by the ADA. Appellees' reading would also undermine the ADA's broad remedial purpose to prohibit disability discrimination in all aspects of the employment relationship, leaving disabled retirees unprotected from discrimination in the provision of pensions, health and life insurance, and other post-employment benefits. *See* 42 U.S.C. §§ 12101(a), (b)(1) ("It is the purpose of this chapter—to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.").

Support for our conclusion can be found in the Supreme Court's recent decision in *Robinson,* 519 U.S. at ——, 117 S.Ct. at 843. *Robinson* was handed down in 1997 after the district court decisions in *Castellano* and *Graboski* and the decisions by the Sixth, Seventh, and Eleventh Circuits in *Parker, CNA,* and *Gonzales.* The Supreme Court held, consistent with Title VII's text and broad remedial purpose, that section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a)—an antiretaliation provision which prohibits an employer from discriminating "against any of his employees or applicants for employment"—protects former employees as well, even though "former" employees are no-

where mentioned in that section. *Id.* at ——, 117 S.Ct. at 849. Notably, with an exception not applicable here, the definition of "employee" under the ADA parallels that under Title VII and was intended to be given the "same meaning." 29 C.F.R. pt. 1630, App. at 349 (1997) (commenting on 29 C.F.R. 1630 pt. 2(a)–(f)); *see also* H.R.Rep. No. 101–485(II), at 54, 76, 149, *reprinted in* 1990 U.S.C.C.A.N. 336, 359, 432 (Title I incorporates by reference Title VII's definition of "employee"); 42 U.S.C. § 12111(4); 42 U.S.C. § 2000e(f).

The Court in *Robinson* first determined "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole" that the language of section 704(a) of Title VII is ambiguous and then interpreted the statutory language in light of the purposes of section 704(a) and Title VII. *Robinson*, 519 U.S. at ——, 117 S.Ct. at 846. The Court concluded that a crabbed interpretation excluding "former employees" from the protections of Title VII antiretaliation provisions would have undermined their "primary purpose . . . : [m]aintaining unfettered access to statutory remedial mechanisms." *Id.* at ——, 117 S.Ct. at 848. This reasoning applies with equal force to the instant case. An interpretation excluding from the ADA former employees or employees who can no longer perform the essential functions of their former employment would undermine the purpose of preventing disability discrimination in the provision of fringe benefits. *See also Brown v. New York State Teachers' Retirement Sys.*, 834 F.2d 299, 300 (2d Cir. 1987) (Title VII challenge by two retired women teachers to pension and annuity benefits determined by sex-distinct mortality tables); *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1054–55 (2d Cir.1978) (construing "employee" in Title VII to include former employees in light of statute's purpose "to furnish a remedy against an employer's use of discrimination in connection with a prospective, present or past employment relationship to cause harm to another."); *EEOC v. J.M. Huber Corp.*, 927 F.2d 1322, 1331 (5th Cir.1991) (" '[t]here is no ground for affording any less protection [against retaliation] to defendant's former employees than to its present employees' under Title VII.") (quoting *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1166 (10th Cir.1977)).

We note that the EEOC has, in the context of fringe benefits, taken the position that "qualified individual[s]" include former employees who can no longer perform the "essential functions" of their former employment. *See* Amicus Curiae Brief for the EEOC, *Castellano v. City of New York*, No. 96–7920. As evidenced by the ADA's language and legislative history, it is inconceivable to us that Congress would in the same breath expressly prohibit discrimination in fringe benefits, yet allow employers to discriminatorily deny or limit post-employment benefits to former employees who ceased to be "qualified" at or after their retirement, although they had earned those fringe benefits through years of service in which they performed the essential functions of their employment.

■ The narrow interpretation sought by appellees in the instant actions would permit employers to deny VSF benefits on the basis of disability to retirees with twenty years of service who elected to retire "for service," either the day after their retirement or in any event as soon as they could no longer perform the "essential functions" of their former employment. In light of the textual ambiguity surrounding the time at which a plaintiff must have been a "qualified individual," the purpose of the "essential functions" requirement, the illogic inherent in a statutory prohibition of discrimination in the provision of fringe benefits that would exclude a large body of retirees from coverage, and the ADA's broad remedial purpose, we hold that a former employee with a disability who "with or without reasonable accommodation" could "perform the essential functions of the employment position" for a period sufficient to establish entitlement to an employer-related fringe benefit (i.e., who is otherwise entitled to receive a fringe benefit) is a "qualified individual with a disability" within Title I of the ADA for the purpose of challenging alleged discrimination in the provision of that fringe benefit.

Because the claims of all appellants alleging violations of section 504 of the Rehabilitation Act and Title II of the ADA can easily be disposed of on the merits, we assume without deciding that these appellants are also "qualified individuals" within the meaning of those provisions.

III. *The ADA and Rehabilitation Act Claims: "Because of Disability"*

Having determined that all of the appellants have met the threshold "qualified individual" requirement with respect to their Title I ADA challenge, we turn to the question of whether the VSF statutory scheme discriminates on the basis of disability.

A. *Retirees With Less Than Twenty Years of Service (Class I Retirees)*

■ Some of the Castellano, Graboski, Adornetti, and Clifford appellants served less than twenty years but nevertheless claim entitlement to the VSF benefits under the ADA and Rehabilitation Act. These Class I retirees assert in substance that the ADA entitles a disabled person who retires after ten, or even two, years to receive the same pension as a twenty-year retiree. Titles I and II of the ADA and section 504 of the Rehabilitation Act, however, prohibit discrimination only on the basis of disability. *See* ADA Title I, 42 U.S.C. § 12112 (prohibiting discrimination against a "qualified individual with a disability because of the disability of such individual"); ADA Title II, 42 U.S.C. § 12132 (prohibiting discrimination against a "qualified individual with a disability ... by reason of such disability"); Rehabilitation Act § 504, 29 U.S.C. § 794 (prohibiting discrimination against an "otherwise qualified individual with a disability ... solely by reason of her or his disability.").

The Class I retirees are similarly situated not with twenty-year "for service" retirees, but with non-disabled retirees who retire after an equivalent period of service. Because the latter group is not entitled to VSF benefits, there is no unlawful discrimination. As noted by the EEOC, "[w]here an employer offers ... a service retirement plan, there is no ADA violation as long as the service retirement plan treats persons who are covered by the ADA the same as other employees." EEOC Notice No. 915.002 "Questions and Answers About Disability and Service Retirement Plans Under the ADA," May 11, 1995, at 2. In rejecting an ADA, Title II challenge to the VSF scheme by retired New York City Housing and Transit police officers, the New York Court of Appeals has also stated:

Eligibility for the benefits of VSF membership require [sic] a minimum of 20 years accredited service. Such a requirement precludes from benefits only officers with less than 20 years of credited service, not those who retired because of a disability. Consequently, the for service eligibility requirement does not discriminate against or burden disabled individuals in a manner different from or greater than the burdens it places on nondisabled individuals.

*Gagliardo v. Dinkins,* 89 N.Y.2d 62, 651 N.Y.S.2d 368, 674 N.E.2d 298, 304 (1996). This analysis applies to the Class I retirees' Rehabilitation Act claims. *See Lyons v. Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir. 1995); 29 U.S.C. § 794(d) ("The standards used to determine whether [section 504 of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination ... shall be the standards applied under title I of the [ADA]...."). Because VSF payments are available equally to persons with and without disabilities who retire after twenty years of service, Class I retirees have failed to state a claim of discrimination on the basis of disability under the ADA or the Rehabilitation Act.

■ Nor, as noted by the EEOC, does the ADA "require that service retirement plans and disability retirement plans provide the same level of benefits, because they are two separate benefits which serve different purposes." EEOC Notice No. 915.002 at 2. The ADA requires only that persons with disabilities have the opportunity to receive the same benefits as non-disabled officers who have given an equivalent amount of service. *Cf. Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985).

### B. Retirees With Twenty Years of Service Who Retired Under a Disability Plan (Class II Retirees)

■ The Class II disabled retirees served for twenty years as police officers, transit police officers, firefighters, or fire officers and elected, under the statutory scheme, to retire under the disability and not the "for service" plan. All of the Class II retirees concede that they chose voluntarily to forego "for service" in favor of disability retirement, but nevertheless argue that they are entitled under the ADA and Rehabilitation Act to "for service" benefits in addition to their disability benefits. We disagree.

Although the ADA is violated where "persons covered by the ADA who qualify for both a service retirement and disability retirement plan are required to take a disability benefit which is less advantageous," EEOC Notice No. 915.002 at 3, nothing in the ADA requires an employer to provide to disabled employees the VSF benefits of a service plan *in addition to* freely-chosen disability benefits under a disability plan. *See Felde v. City of San Jose*, 839 F.Supp. 708, 710 (N.D.Cal.1994), *aff'd mem.*, 66 F.3d 335 (9th Cir.1995) (employee afforded choice of regular and allegedly inferior disability retirement plans was given additional option of disability plan and not excluded from any retirement plan on the basis of disability); *cf. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (no discrimination under Rehabilitation Act where state provides equal access to health care for all individuals).

### C. Deferred Compensation and the ADA Claim

The Graboski appellants point to an isolated statement in the New York Court of Appeals opinion in *Gagliardo* for the proposition that the statutory scheme entitles police officers and firefighters to VSF benefits regardless of disability status. In rejecting a claim that the VSF benefits constituted an unconstitutional gift under Article VIII, § 1 of the New York State Constitution, the New York Court of Appeals in *Gagliardo* stated:

> The [VSFs] were created through collective bargaining as *additional future compensation for services actually rendered by police officers* within the bargaining unit during the life of the agreement. In addition, these supplemental benefit payments also serve the important purpose of attracting and retaining qualified candidate-officers and providing an inducement to remain in active police service.

*Gagliardo*, 651 N.Y.S.2d 368, 674 N.E.2d at 303 (emphasis added). Because VSF payments are not retirement benefits but rather deferred compensation under New York law, appellants argue, the statutory scheme denies this earned but deferred compensation only to disabled employees who are unable to complete twenty years of service. The above statement in *Gagliardo*, however, disposed of a claim that the VSFs violated the gift ban of the New York Constitution and did not address an ADA claim. The court's further characterization of the VSFs as "inducement[s] to remain in active ... service" undermines appellants' position that the benefits constitute deferred compensation. *Id.* The fact that the level of VSF benefits does not vary by years served is a further indication that the VSF is not bargained-for compensation for services rendered. In light of *Gagliardo*'s ultimate holding that the VSF program does not violate Title II of the ADA, the above statement taken in context does not support appellants' ADA claim.

### D. Velardi's Title I ADA Claim

■ Velardi is neither a Class I nor Class II retiree. Seen in the light most favorable to Velardi, Velardi's complaint alleges that he served twenty years as a firefighter and that the NYFD Pension Fund discriminated as between twenty-year retirees on the basis of disability, denying "additional [VSF] benefit[s]" only to himself and other disabled firefighter retirees. ROA No. 96–9237, doc. 1 at 5. The NYFD moved to dismiss Velardi's complaint under Fed.R.Civ.P. 12(b)(6), claiming (i) that Velardi was not a "qualified individual with a disability" within Title I because he could no longer perform the essential functions of his former employment, and (ii) that the VSF scheme discriminates only on the basis of years served, not on the basis of disability. The motion to dismiss failed to address Velardi's factual allegation

that after twenty years of service he had been forced to retire with disability rather than "for service."

Velardi's response to NYFD's motion again claimed that, unlike Class II retirees, he "was required to retire on an ordinary disability," ROA No. 96–9237, doc. 11 at 5, and that it was "wrong for a disabled person to receive far less benefits than what is given to a service retiree with the same time served." ROA No. 96–9237, doc. 10 at ¶ 20. At oral argument before the district court, Velardi stated that he did not apply for "for service" retirement because it was never offered to him and he was unaware of the option. ROA No. 96–9237, doc. 46 at 35. Judge Kaplan then consolidated Velardi's case with the Graboski case and, finding Velardi on "equal footing" with the Graboski appellants, *Graboski*, 937 F.Supp. at 268, granted NYFD's Fed.R.Civ.P. 12(b)(6) motion to dismiss Velardi's complaint.

Velardi's complaint alleges a valid cause of action under Title I of the ADA. First, we have now held that Velardi is a "qualified individual with a disability" within Title I of the ADA. Second, unlike the Class II retirees who knew of and freely chose "for service" retirement, Velardi's complaint alleges that the NYFD required him to retire on ordinary disability, even though as a twenty-year retiree he was qualified to receive benefits under the "for service" plan. The ADA is violated where "persons covered by the ADA who qualify for both a service retirement and disability retirement plan are required to take a disability benefit which is less advantageous." EEOC Notice No. 915.002 at 3. It is unclear on the record before us whether in fact Velardi was forced by NYFD to forego "for service" benefits, in that the NYFD failed to inform Velardi of the "for service" retirement option. If such a failure occurred, it would be sufficient to establish Velardi's Title I ADA claim. At the pleading stage when events are seen in the light most favorable to Velardi, *see Jackson*, 32 F.3d at 699–700, we cannot equate Velardi with the Class II Graboski appellants, who chose to retire with disability and who now request "for service" benefits as well. We therefore vacate the judgment of the district court insofar as it dismissed Velardi's complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## IV. *ADEA*

■■■ The Castellano and Graboski appellants who retired before October 1, 1968 and are therefore ineligible to receive VSF benefits allege that, in violation of the ADEA, they were denied VSF benefits "solely because [they] retired prior to [the effective date of VSF implementation] and are older than those . . . receiving the privilege." This claim is frivolous. First, the Castellano appellants are barred from asserting an ADEA claim because they failed to file an ADEA complaint with the EEOC sixty days before commencement of the civil action in district court, as required by 29 U.S.C. § 626(d). *See Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 23–26 (2d Cir.1985). Second, because the Graboski appellants failed to raise the ADEA issue on appeal, they have abandoned it. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir.1995); Fed.R.App.P. 28(a)(6) (appellant's brief "must contain the contentions of the appellant on the issues presented.")

■■■ Finally, even if the Castellano and Graboski appellants' claims were still alive, their factual allegation that they are "older" than other officers receiving VSF benefits, without more, is insufficient to state an ADEA claim. *See, e.g., Dugan v. Martin Marietta Aerospace*, 760 F.2d 397, 399 (2d Cir.1985) (stating basic elements of ADEA prima facie case). Just as the ADEA does not mandate that "any improvements to a pension plan [be applied] retroactively to any active employees for past services," *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 572 F.Supp. 1494, 1506 (N.D.Ill. 1983), *aff'd*, 756 F.2d 1274 (7th Cir.1985), the ADEA plainly does not require that any improvements in retirement benefits be applied retroactively to past employees who retired under different terms.

## V. *Contract Clause Claim*

Various appellants claim that, by denying them VSF benefits, various appellees have impaired their rights under the Contract

Clause, Article I, Section 10 of the Constitution.

### A. *Adornetti Appellants' Claim*

The Adornetti appellants claim that the VSF implementing legislation, 1987 N.Y.Laws ch. 844, limiting VSF-benefit eligibility to "for service" retirees, impaired their contractual rights to VSF benefits created in a 1968 collective bargaining agreement ("CBA") between the Patrolman's Benevolent Association and New York City. That CBA states: "The purpose of [the VSF] shall be to provide a supplemental benefit on a variable annuity basis, for Articles I and II, as determined by the trustees." *Castellano v. Board*, 937 F.2d at 754. Although that CBA by its terms did not apply to transit police officers (but rather to members of another police pension fund), appellants claim entitlement to the contractual rights to the VSF benefits that the CBA allegedly conferred, pursuant to § 13–157(j)(2) of the Code, which provides:

> [E]ach transit police member shall have and shall be entitled and subject to the same rights, benefits, privileges, and obligations as a member of the police force of the city who is a member of the police pension fund maintained pursuant to subchapter two of chapter two of this title, with respect to the matters provided for in [sixteen listed sections of the Code].

We express no opinion as to whether or not § 13–157(j)(2) confers upon transit police officers the benefits bestowed by the PBA's CBA, because we easily hold that, even if it did, the PBA's CBA creates no contractual entitlement to VSF benefits. Art. I, § 10 of the Constitution provides: "No State shall ... pass any ... Law impairing the Obligation of Contracts." Where there is no contractual relationship, however, there can be no impairment. *See General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109–10, 117 L.Ed.2d 328 (1992). This court has previously rejected a Contract Clause claim brought by police retirees based upon the same CBA, holding that the CBA plainly did not create any contractual obligation, but only established a general fund the beneficiaries of which were to be determined later by the legislature. *See Castellano v. Board*, 937 F.2d at 757. For the reasons stated in *Castellano v. Board*, we reject the Adornetti appellants' Contract Clause claim.

### B. *Graboski Appellants' Claim*

The Graboski appellants claim that their VSF implementing legislation, 1970 N.Y.Laws chs. 876, 877, restricting eligibility for VSF benefits to "for service" retirees, impaired their contractual right to VSF payments created in their original CBAs between New York City and the UFA and UFOA. The UFA's and UFOA's CBA clauses allegedly creating this contractual right state: "The purpose of [the VSF] shall be to provide a supplemental benefit on a variable annuity basis for Article I and IB ["fire officer[s]" or "firemen,"] as determined by the trustees." UFA CBA, Article VII, Section 6; UFOA CBA, Article X, Section 6. Because this language is virtually identical to the language in the CBA that we held in *Castellano v. Board* did not create contractual rights to VSF benefits, we reject this Contract Clause claim as well. *See Castellano v. Board*, 937 F.2d at 757.

The Graboski appellants next contend that the original VSF-implementing legislation, 1970 N.Y.Laws chs. 876, 877, itself created contractual rights in the VSF payments impaired by later amending legislation. For example, the original 1970 legislation defined the permissible class of VSF beneficiaries as, among others, "[a]ny person who receives a retirement allowance by reason of having retired from service...." 1970 N.Y.Laws ch. 877 at §§ B19–40.00 subd. 5, B19–60.0 subd. 6. In 1972, the legislature amended "from service" to "for service," explicitly characterizing the amendment as a correction of a typographical error. *See* 1972 N.Y.Laws chs. 1011, 1012. This amending legislation, appellants contend, impaired the contractual rights of non-"for service" retirees to VSF benefits. We disagree.

The New York Court of Appeals rejected a similar challenge by police officer retirees, holding definitively that the original 1970 VSF-implementing legislation created no contractual obligation to disburse VSF pay-

ments under New York law. *See Ballentine v. Koch*, 89 N.Y.2d 51, 651 N.Y.S.2d 362, 674 N.E.2d 292, 297–98 (1996). According to that court, the statutory scheme for payments of VSF benefits is "highly conditional and discretionary"; no retiree could be "assured that funds for supplemental payments would be available, or that the payments, if made, would be of a certain amount or continue for any specified duration"; and "the statute itself expressly stipulated that it did not create any contractual rights as to the [VSF] payments." *Id.; See* Code at § 13–271(b)(2)(i) (Police officers' VSF: "The legislature hereby declares that [the VSFs] shall not create or constitute membership in a pension ... system and *shall not create or constitute a contract with any pension fund beneficiary....*") (emphasis added); *id.* at § 13–385(b)(2)(i) (same for firefighters' VSF); *id.* at § 13–395(b)(2)(i) (same for fire officers' VSF). Because, under the 1970 implementing legislation, firefighters and fire officers are no more entitled to VSF benefits than were the police officers in *Ballentine,* any amending legislation affecting these appellants' VSF benefits—whether substantive or typographical—could not constitute an "impairment" in violation of the Contract Clause. *See General Motors,* 503 U.S. at 186, 112 S.Ct. at 1109–10.

## VI. *Other Constitutional Claims*

The Graboski appellants claim that the statutory scheme's failure to provide payments to non-"for service" retirees violates the Equal Protection Clause of the Fourteenth Amendment. In our previous decision of *Castellano v. Board,* we easily disposed of this claim. *See Castellano v. Board,* 937 F.2d at 755–57. The statutory scheme bears a rational relationship to a government interest. As we held in *Castellano,* "[i]n allowing VSF payments only to 'for service' retirees, the city struck a balance between 'for service' and other retirees" in order to "serve[ ] the legitimate governmental interest of discouraging experienced members of the police force from seeking early retirement." *Id.* at 756.

The Castellano appellants contend further that the district court's failure to

grant discovery before dismissing their complaint pursuant to Fed.R.Civ.P. 12(b)(6) violates their "right to petition for redress of grievances under the First and Fourteenth Amendments, and to Due Process of Law and Equal Protection of the laws under the Fifth Amendment to the United States Constitution." Castellano's Br. at 8–9. This claim, unsupported by authority, must be rejected as frivolous. *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994) (district courts consider only allegations in complaint in deciding 12(b)(6) motions); *M.B. # 11072–054 v. Reish,* 119 F.3d 230, 232 (2d Cir.1997) (district court's discovery rulings "reversed only upon a clear showing of an abuse of discretion.") (internal quotation marks omitted).

## VII. *State Law Claims*

The Castellano, Graboski, and Adornetti appellants advance various New York state law claims in addition to their federal claims. These include asserted violations of several provisions of the New York Constitution, breach of the duty of fair representation under New York Civil Service Law § 2200 *et seq.,* unjust enrichment, quantum meruit, and violation of New York public policy against forfeiture of earned wages. In light of the district courts' proper dismissals of the federal claims of all of these appellants, save Velardi, those courts did not abuse their discretion in declining to exercise supplemental jurisdiction over the state claims. *See* 28 U.S.C. § 1367(c)(3); *see also Castellano v. Board,* 937 F.2d at 758–59 (affirming district court's dismissal of pendent state constitutional claims in light of dismissal of all federal constitutional claims).

We have carefully considered all of the appellants' remaining arguments and find them to be without merit. In addition, various appellees have raised a number of defenses including statutes of limitations, lack of personal involvement, Eleventh Amendment immunity, legislative immunity, immunity under 42 U.S.C. § 1983, the New York Constitution, and other state common law and statutory grounds. No appellee has raised any such defense in the Velardi case.

In light of our disposition of these appeals, we need not consider these defenses.

## Conclusion

The judgment dismissing the claim of *Velardi v. New York City Pension Fund* (No. 96–9237) is vacated and remanded for further proceedings and the parties shall pay their own costs for this appeal. All of the other judgments on appeal are affirmed. (Nos. 96–7920, 96–9257, 96–9289, 96–9601, 96–9004).