BERZON, Circuit Judge,
concurring:
I concur in Part II and Part III of the majority opinion, and also, reluctantly, in Part I.
Part I holds Castle not an employee under Title I of the Americans with Disabilities Act (“ADA”). 42 U.S.C. §§ 12111(4), 12112(a). The sweep of Hale v. Arizona, 993 F.2d 1387 (9th Cir.1993), and Coupar v. Department of Labor, 105 F.3d 1263 (9th Cir.1997), compels that conclusion. But the notion that prisoners who work for covered employers can never be “employees” for purposes of federal employee-protective statutes undermines those statutes as applied to employees generally and misconstrues the reach of the “employee” designation.
Castle labored for a private employer, off prison grounds, under compulsion of a sentence requiring work. Hale, by contrast, concerned prison labor that shared only the latter two of these three characteristics, and so did not expressly decide the employee status of prisoners working on behalf of private employers. Hale, 993 F.2d at 1390. That distinction, I would like to think, matters: A profit-seeking firm that hires convicts at its own worksite should not be shielded from the costs of compliance with the ADA. Those costs can be substantial, as the ADA requires employers to make “reasonable accommodation,” allowing disabled employees to complete a job’s “essential functions,” 42 U.S.C. §§ 12111(8), 12112(a), unless such accommodation “would impose an undue hardship” on the employer’s business, 42 U.S.C. §§ 12112(b)(5)(A). Permitting private employers to escape those costs while *912 profiting from the use of prison labor markets undermines the enforcement of the statutory requirements generally, by creating incentives for competing employers to shirk compliance with regard to non-prison labor — and thereby economically disadvantaging competitors of those employers using prison labor.
Precedent, however, forecloses consideration of such concerns when deciding whether prison laborers are covered by federal statutes protecting employees. Hale proclaimed broadly that the usual standard for evaluating employee status— the economic reality test described by Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir.1983) — is inapplicable “in the case of prisoners who work for a prison-structured [labor] program because they have to.” Hale, 993 F.2d at 1394. In that circumstance, we held, “the economic reality of the relationship between the worker and the entity for which work was performed lies in the relationship between prison and prisoner. It is penological, not pecuniary.” Id. at 1395. In other words, “the economic reality is that [prisoner] labor belong[s] to the institution.” Id.
Hale recognized the problem of unfair competition through the use of prison labor. But it viewed the Ashurst-Sumners Act, 18 U.S.C. §§ 1761-1762, as Congress’ entire response to the adverse effects of “unfair competition in the products market from prison-made goods.” Hale, 993 F.2d at 1397. That Act criminalizes the distribution of prisoner-made products in interstate commerce, 18 U.S.C. § 1761(a), with exceptions for certain classes of goods, 18 U.S.C. § 1761(b)-(c), including agricultural commodities, 18 U.S.C. § 1761(b). But it does not reimburse firms not employing prison labor, or the workers at such firms, for the bottom-line impact (through intrastate sales and services or sales and services of excepted products) of the cost-savings achieved by ignoring federal employee protection for prison laborers. Mandatory labor may be “penological, not pecuniary,” for prisoners and their jailers. Hale, 993 F.2d at 1395. But it is assuredly a matter of dollars and cents to firms seeking profit in a competitive market and law-abiding citizens vying to work for them.
Hale’s broad language is all the more disturbing because that case concerned prisoner wages under the Fair Labor Standards Act (“FLSA”), 29 U.S.C. § 201 et seq., not the ADA. The FLSA regulates matters that are, on their face, pecuniary. Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1154 (9th Cir.2000) (“[T]he Supreme Court and the Ninth Circuit have consistently found that the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees.”). The ADA, by contrast, prohibits discrimination, with an eye toward the “conditions ... of employment,” 42 U.S.C. § 12112(a) (emphasis added). “[T]he mere fact of discrimination offends the dignitary interest that the statute[ is] designed to protect, regardless of whether the discrimination worked any direct economic harm to the plaintiffs.” Shaver v. Indep. Stave Co., 350 F.3d 716, 724 (8th Cir.2003). The non-pecuniary character of prison labor thus tells us little about the applicability of the ADA, which addresses non-economic harms. Indeed, habituating prisoners to the sort of discrimination that Congress has outlawed elsewhere in the economy hardly rehabilitates them to our national norms or prepares them to participate in the workforce once released. See Hale, 993 F.2d at 1398 (listing rehabilitative goals of hard labor); City of S. Tucson v. Indus. Comm’n of Ariz., 156 Ariz. 543, 753 P.2d 1199, 1205 (Ct.App.1988) (same).
Yet our primary case interpreting Hale rejects this commonsense distinction be *913 tween “purely economic employee protections and protections with a dignitary aspect. Coupar applied Hale to a prisoner seeking the protection of the anti-retaliation provisions of the Clean Air Act, 42 U.S.C. § 7622(a), and the Toxic Substances Control Act, 15 U.S.C. § 2622(a), notwithstanding the non-pecuniary policies that animate those Acts. See Coupar, 105 F.Bd at 1265. It reasoned that Congress “extended] whistleblower protection only to ‘employees,’ ” and not “retaliation by any violator against any whistleblower.” Id. at 1266 (emphasis in original). A prisoner “obligated to work at some job pursuant to a prison work program” falls “within the rule of Hale,” no matter the policies the statute addresses, when that statute applies to “employees.” Id. at 1265.
Like the whistleblower protections in Coupar, the protections of the ADA’s Title I run only to “employees.” 42 U.S.C. §§ 12111(4), 12112(a). Given Coupar’s gloss on Hale, I cannot avoid the conclusion that Castle is not an “employee.” Consequently, although I would support reconsideration of Hale, or at least of Cou-par’s reading of Hale, I concur in the majority’s application of those cases to this one.
As today’s opinion demonstrates, however, Castle — and the commonsense congressional policies he seeks to vindicate — is not without recourse. Because his jailers cannot contract away their obligations under Title II of the ADA, the majority holds them liable for any violation of Castle’s right to accommodation under the ADA. See Maj. Op. Part III. To the extent the state passes along any such liability — and the costs of avoiding it in the future by accommodating disabled employees — to the private employers with whom it contracts, today’s holding will also dampen the competitive advantages of hiring convict labor.
Other anti-discrimination statutes might be amenable to a similar solution to the problem our cases have created. Many violations of Title VII, for example, may be actionable against the prison authorities under 42 U.S.C. § 1983. Cf. Williams v. Meese, 926 F.2d 994, 998 (10th Cir.1991) (observing that a federal prisoner may be able to bring a Bivens action if prison officials “discriminate against him on the basis of his age, race, or handicap, in choosing whether to assign him a job or in choosing what job to assign him”).
This observation, along with the majority’s Title II holding, somewhat reduces my concern about the adverse consequences of today’s rulings — but only if the prison’s ADA responsibilities are fully met. To meet their ADA Title II obligations, prison officials cannot simply provide some job to disabled prisoners, at whatever rate of pay and whatever working conditions. Rather, Title II requires “that persons with disabilities have the opportunity to receive the same benefits as non-disabled” people who are similarly situated, Castellano v. City of New York, 142 F.3d 58, 70 (2d Cir.1998), so long as such opportunity can be provided via “ ‘reasonable modifications’ that would not fundamentally alter the nature of the service provided,” Tennessee v. Lane, 541 U.S. 509, 532, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004). That means, to me, that, if the prison is going to farm out prison labor to offsite private employers, at higher pay and a more favorable location than are available to prisoners within the prison’s walls, the prison must ensure that the ADA standards are met with regard to that opportunity.
With those observations, I concur in the opinion.